# American Fidelity & Casualty Company v. Traders & General Insurance Company.

No. A-7320. Decided December 9, 1959.
Rehearing Overruled March 30, 1960.
Second Rehearing Overruled May 18, 1960.
(334 S.W. 2d Series 772)

*McLeod, Mills, Shirley & Alexander* and *V. W. McLeod,* all of Galveston, for petitioner.

The Court of Civil Appeals erred in failing to affirm the

judgment against Traders & General on the basis of waiver and estoppel, since Traders & General investigated and defended Mizell in the Duff suit without obtaining a non-waiver agreement. American Indmn. Co. v. Fellbaum, 114 Texas 127, 263 S.W. 908, 37 A.L.R. 633; Automobile Underwriters Ins. Co. v. Long, (Com. App.) 63 S.W. 2d 356; Pacific Employers v. Hartford Accident & Indemnity Co., 228 Fed. 2d 365.

*Vinson, Elkins, Weems & Searls, Thomas B. Weatherly, Dan P. Johnston and Gaius G. Gannon, Jr.,* for respondent.

On the proposition that Traders & General were not liable on the basis of waiver or estoppel and that its policy afforded no coverage for the accident in question. Iowa Mutual Ins. Co. v. Faulkner, 157 Texas 183, 300 S.W. 2d 639; Associated Indemn. Corp. v. National Surety Corp., 287 S.W. 2d 714; Ligon v. Redding, (Ky.) 188 S.W. 2d 483.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

James Edward Duff recovered judgment against Leonard Mizell, doing business as Mizell Truck Lines, for $34,000.00 damages for personal injuries. Mizell carried two policies of insurance. One policy was a standard automobile liability policy issued by American Fidelity & Casualty Company, hereinafter called American, and the other a comprehensive general bodily injury and property damage liability policy issued by Traders & General Insurance Company, hereinafter called Traders & General.

The instant suit was brought by Duff to recover against the insurance companies the amount of his judgment against Mizell, and resulted in a judgment in his favor against both companies, holding them jointly and severally liable on two grounds: first, on the ground of waiver and estoppel arising from their joint defense of the original suit in Mizell's behalf; and second, on the ground of overlapping policy coverage. The American paid the entire judgment, and Traders & General appealed, seeking to avoid liability for contribution to American of one-half of the amount of the judgment.

The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of Traders & General, holding (1) that the question of waiver and estoppel was not present, and (2) that Traders & General's policy did not pro-

vide coverage for the accident giving rise to Duff's cause of action against Mizell. 323 S.W. 2d 81. American challenges in this court the decision of the Court of Civil Appeals on both grounds.

1 Because American has not appealed the decision of the trial court, no question is presented as to the coverage afforded by its policy. Moreover, if Traders & General was liable under the terms of its policy, the question of waiver and estoppel on account of its joining American in the defense of Duff's suit against Mizell becomes immaterial. Only if we were to hold that Traders & General's policy did not cover the accident would we reach the question of whether it waived the defense of noncoverage. We have concluded, however, that Traders & General's policy covered this accident, and shall not discuss the question of waiver and estoppel.

The insuring clause of Traders & General's policy is very broad, reading as follows:

"Coverage B—Bodily Injury Liability—Except Automobile To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

Its policy also provides coverage against liability for damage to property cause by accident (Coverage D), but that coverage is not involved in this determination. The scope of coverages B and D is limited by Exclusion (b), which states:

"(This policy does not apply:) under *Coverages B and D*, except with respect to operations performed by independent contractors, to watercraft while away from premises owned, rented, or controlled by the Named Insured, automobiles while away from such premises or the ways immediately adjoining

* * *."

We confess difficulty in construing the language of this exclusion. To us, it is rather involved. American construes it as saying that Coverage B applies to operations on any premises "owned, rented, or controlled" by the Insured; while Traders & General contends that the coverage provided by its policy extends only to accidents occurring on Mizell's premises at Gana-

do, Jackson County, Texas, and in the alternative, that if it extends to accidents occurring on other premises "owned, rented, or controlled" by Mizell, the premises on which this accident occurred were neither owned, rented, nor controlled by him. It is not claimed that the premises upon which the accident occurred were owned or rented by Mizell, and the question is narrowed to whether they were controlled by him.

**2** The policy is not explicit. Item 1 of the Declarations discloses the following information entered by Mizell:

"Name of Insured        Mizell Truck Line

Address        Ganado, Jackson County, Texas

Location of all premises owned, rented or controlled by Named Insured (Enter 'Same' if same location as above address)        Same

Interest of Named Insured in such premises - - -

Part occupied by Named Insured - - -

Business of the Named Insured is        Oil Field Trucking

The Named Insured is        Individual-Leonard Mizell"

The policy contains neither a definition of the word "premises" nor any specific limitation of coverage to Mizell's premises at Ganado. In order to determine the extent of coverage afforded by this policy, it must be interpreted as it would be were Mizell and Traders & General the interested parties, for it is the coverage *as to Mizell* with which we are concerned. The mere fact that in answer to questions propounded to him Mizell gave as the address and location of the premises then owned, rented, or controlled by him as "Ganado, Jackson County, Texas," does not necessarily limit the liability of the company to accidents occurring in that county. Construing the policy as a whole, we cannot see that it limits coverage to accidents occurring on the premises owned, rented, or controlled by Mizell at the time of its issuance.

In its supplemental brief filed in this court, Traders & General sums up the matter in this language:

"The meaning of the word 'control' in Traders & General's policy is of importance in determining whether or not it afforded coverage to the accident in question. In essence, if the site where this accident occurred were 'premises owned, rented, or *controlled*' by Mizell, our insured, then our Policy afforded concurrent coverage along with American's policy. On the other hand, if the facts showed that this was not such a 'premises' owned, rented, or controlled by the insured as was intended by the parties to this contract when the wording was incorporated therein, then there is no coverage."

Traders & General has thus narrowed the question to whether Mizell was in control of the premises in Montgomery County where the accident occurred. The fact that the accident may have involved the use of an automobile is not determinative of the liability of Traders & General; so long as it occurred on premises controlled by Mizell, it is immaterial how it was caused.

**3** While the question is not free from doubt, we have concluded that Mizell was in control of the premises where the accident occurred. Black's Law Dictionary (4th Ed., 1951) defines "control" as "Power or authority to manage, direct, govern, administer, or oversee." In State v. Camper, 261 S.W. 2d 465, it is stated that "control" is "synonymous with management." Duff's injuries occurred while a drilling rig was being "rigged down," or dismantled, by a Mizell crew on a lease owned by the Peters Drilling Company in Montgomery County. Two of Mizell's trucks were being used, a tandem and a winch truck, under the supervision of Roy Mizell, Leonard Mizell's brother. Duff was an employee of Peters, and with other employees of Peters, was involved in the "rigging down" operation. Peter's employees were engaged in the dismantling of the rig, while Mizell's employees moved the various component parts from the substructure of the rig to other locations on the drilling site and stacked them there for future use. The rig belonged to Mizell but was under lease to Peters. All of the activities other than the mechanical dismantling of the rig itself were under the direction of Roy Mizell. He determined how the trucks were to be used, where the components of the rig were to be stacked, and supervised both the loading and the unloading of the trucks. We have concluded that such authority fulfills the requirement of "control" over the premises as provided for in the policy. There is no case which we regard as being directly in point, but support is afforded our conclusion by the opinion in Pacific Employers Insurance Co. v. Hartford Accident & Indemnity Co., 228 F.

2d 365. Accord: Bates v. Connecticut Power Co., 130 Conn. 256, 33 A. 2d 342; John G. Speirs & Co. v. Underwriters at Lloyd's, London, Cal. App., 191 P. 2d 124.

4 Neither Mizell nor Duff has any interest in the outcome of the present litigation, but as between the two companies, it is our conclusion that insofar as the judgment of the trial court granting contribution between the two companies was reversed by the Court of Civil Appeals, the latter Court's judgment should be reversed and that of the trial court affirmed.

Opinion delivered December 9, 1959.

ON MOTION FOR REHEARING

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

5 In its motion for rehearing, Traders and General urges that it is entitled to indemnity against American for whatever amount it may be liable to pay as a result of our holding that its policy affords coverage for the accident in question. This argument is based primarily upon the ground that American's policy afforded protection not only to Mizell but to any person while using an insured automobile with his permission, while Traders and General's policy afforded protection to Mizell only. It appears that the injuries to Duff resulted from the negligence of an employee of Mizell. Therefore, it is argued that had Duff sued the employee and recovered judgment against both him and Mizell, and had Mizell sought indemnity against the employee, he would have been entitled thereto, and had the employee then sued American, he would have been entitled to indemnity for the full amount of judgment rendered against him. The entire argument is based upon the conclusion that the record establishes that the employee would have been entitled to recover against American. The burden of proving his right thereto would have rested upon him, and since Traders & General is relying upon the employee's right to indemnity, the burden likewise rested upon it to establish upon the trial the right of the employee to indemnity. The employee was not a party to this suit, and the trial court denied Traders & General's claim to indemnity. The Court of Civil Appeals reversed the trial court's judgment on other grounds and did not discuss this question. The real question presented is whether or not the claim to indemnity was established in the trial court as a matter of law.

**6** The American's policy provided: "When an accident occurs written notice shall be given by or on behalf of the insured to. the company or any of its authorized agents as soon as practicable." The record discloses that American did not receive notice of the accident until some eight months had elapsed after its occurrence. That notice came neither from Mizell nor the. driver of the vehicle, but was contained in a letter to American from Mizell's workman's compensation insurance carrier. In Klein v. Century Lloyds, 154 Texas 160, 275 S.W. 2d 95, this court held that where an insured under an automobile liability policy gave no notice of an accident until contacted by the insurer's adjuster thirty-two days after it occurred, and his policy, like the instant one, required him to give notice as soon as practicable, persons who obtained judgment against the insured for damages arising out of the accident were not entitled to the benefits of the policy.

**7** The above provision and the facts relevant thereto were pleaded by American in this case as a defense to its liability as insurer of Mizell. The trial court held that American had waived and was estopped to assert the defense of late notice because it had entered into an agremeent with Traders & General to defend the suit brought by Duff against Mizell Construction Company, and had in fact done so. But it does not appear that American has entered into any agreement with the employee responsible for Duff's injuries which would prejudice its right to assert such a defense against him. It cannot be assumed that had the employee sued American, it would not have relied upon his failure to give timely notice of the accident as a defense, and that the defense would not have been sustained. It follows that liability of both companies rests only upon their coverage of Mizell, and no reason is perceived why indemnity should be granted to either against the other.

Traders and General's claim of indemnity is denied, and the motion for rehearing is overruled.

Opinion delivered March 30, 1960.

MR. JUSTICE SMITH joined by JUSTICE NORVELL dissenting.

Traders & General presented two questions in the Court of Civil Appeals: (a) that its policy did not afford any coverage for the accident or hazard made the basis of Duff's suit against Mizell for bodily injuries, and (b) in the alternative, the trial

court erred in not granting Traders & General Insurance Company indemnity over against American for such amounts as it may have to pay under the judgment of the court.

The Court of Civil Appeals, in effect, has sustained both points, although its holding that Traders & General's policy afforded no coverage for the accident in question rendered it unnecessary to pass upon the question of indemnity.

This court in reversing the Court of Civil Appeals has held that the lease site where the accident occurred was under the general control and management of Mizell. This led to the conclusion that "insofar as the judgment of the trial court granting contribution between the two companies was reversed by the Court of Civil Appeals, the latter court's judgment should be reversed and that of the trial court affirmed." With this conclusion I cannot agree. There is no evidence in the record that Mizell controlled the site under the meaning of the word "control" as intended by the parties to the insurance contract. The policy issued by Traders & General is strictly a "premises" policy, whereas, American's is an "automobile policy." Traders & General's policy insured Mizell's premises at Ganado, Jackson County, Texas, as described in the Declarations of the Policy. In this connection, I would say that the policy would also afford coverage on other premises that Mizell might have acquired by way of owning, renting, or controlling same in the sense of having dominion over it, as he did the premises specifically described and situated in Ganado, Texas. The primary intention of Mizell and Traders & General was to furnish protection to this extent and no further. American's automobile policy, already in effect, afforded coverage for the loss sustained on the occasion in question. Traders & General's policy specifically excluded the use of automobiles and liability coverage therefor, and insured only Mizell and not his employees. The Traders & General's policy contains language essential to a holding in its favor. This language follows closely that suggested in the case of Associated Indemnity Corporation v. National Surety Corporation, Texas Civ. App., 287 S.W. 2d 714, no writ history. Had the Associated policy contained such language a different result, no doubt, would have been reached. In that case one party issued an *automobile* liability policy, as did American in this case, and the other party issued a *premises* policy, as did Traders & General in this case. However, the policies involved in the Associated case and this are entirely different. Justice Norvell, speaking for the San Antonio Court of Civil Appeals, in the Associated case, pointed out that "the schedule in turn

contained the words, 'State of Texas,' as designating the 'premises,' and 'operations' to which the policy was applicable." The court went on to say: "* * * Here we have a territorial designation, namely, the State of Texas. As the word 'premises' indicates a location, or something similar thereto, it seems that any job site within the State of Texas where the trucking company is engaged in operations would satisfy the policy requirements of the definition of 'premises' contained in subdivision (a) thereof. * * * The form of the printed policy may suggest that a specific designation of a building or structure should be made. However, neither the main office of headquarters of the insured, located at Sinton, Texas, nor the branch office in Alice, was designated as the 'premises' covered by the policy, and for the court to now so designate them would be to add to and remake the agreement of the parties * * * . Had appellant (Associated) desired to restrict the coverage of its policy to the 'premises' occupied by insured's offices and attendant facilities located in Sinton or Alice, Texas, it could have so expressly provided in its policy. Not having done so, a liberal construction in favor of the insured requires that the policy be interpreted so as to include not only the offices but the *job sites. within the State of Texas where the trucking company carried on operations.*" (Emhasis aded.) This liberal construction was given solely because the terms of the Associated policy did not restrict the "premises" to a place certain. In the instant case, the Traders & General policy designation specifically restricts its coverage to accidents occurring on the premises at Ganado, Jackson County, Texas. The accident occurred at a job site in Montgomery County, Texas, not on premises under the control and dominion of Mizell, but under the ownership, control and dominion of one Peters. This conclusion is inescapable in the light of the meaning of the word "control" as defined in Words and Phrases, perm. Ed., Vol. 9, p. 434, and the undisputed evidence. The word "control" was defined in the case of Board of Insurance Commissioners v. Duncan, Texas Civ. App. (1943), 174 S.W. 2d 326, wr. ref., citing Webster's New International Dictionary, as: "To exercise restraint or deciding influence over; to dominate; regulate; to hold from action, to curb; subject. or overpower." Words and Phrases, supra, defines "control" as: "To control means to exercise restraint or deciding influence over; to dominate: regulate; to hold from action; to curb; subject or overpower."

The effect of this court's holding in the present case is that though the wording of Traders & General policy was precisely restrictive in the way and manner as suggested in the Associ-

ated case, supra, it (Traders & General) was nevertheless liable for contribution to American.

Mizell was engaged in the trucking business. By the very nature of his operations, Mizell was engaged in loading and unloading with the use of cranes and winches throughout his vast operations. It is perhaps not controlling, but to me it is significant that the respective policies show the great number of trucks that were endorsed upon that policy. Traders & General received a premium of $900.00, whereas, American received a premium of $36,000.00. Immediately the question: Why? The answer is simply that an insured pays a premium in accordance with the terms of his contract. Traders & General's was a "premises" policy. The policy described the premises as being located in Ganado, Texas. The policy was intended to provide Mizell with protection on his own premises for liability accidents. The policy provided protection for other premises that Mizell might have acquired control of during the life of the policy, *provided such after acquired property was premises over which Mizell had the right of control and dominion, and provided further that such additional premises had been endorsed on the policy and an additional premium paid therefor.*

This is not a case where an injured workman has been deprived of his compensation. So far as Duff, the workman, is concerned, the insurance of American for which it received a premium of $36,000.00 was adequate to take care of the judgment. The two policies in question were issued simultaneously to afford coverages for different risks. The accident involved occurred on a job site far away from Ganado, Texas, and on a site not endorsed on the policy. The accident occurred on premises under the control of Peters. Mizell had no authority over Peters, the owner of the well. The agents of Mizell, according to the findings of fact of the trial court in the case of Duff v. Mizell, committed the negligent act. American got $36,000.00 for covering this risk. American should not be permitted to shift off a portion of its sole responsibility on Traders & General whose obvious intention was to limit its liability as outlined in its policy.

The judgment of the Court of Civil Appeals should be affirmed.

. Opinion delivered March 30, 1960.

MR. JUSTICE WALKER joined by JUSTICE HAMILTON, dissenting.

While I agree with the majority that the coverage of the Traders & General policy extended to all premises owned, rented or controlled by Mizell even though the same were not described in the original policy or endorsed thereon, it is my opinion that the premises where the accident in this case occurred were not owned, rented or controlled by Mizell within the meaning of the policy. I would affirm the judgment of the Court of Civil Appeals.

Opinion delivered March 30, 1960.

Second rehearing overruled May 18, 1960.