208 So.2d 465 (1968)
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Inc., Appellant,
v.
SHELBY MUTUAL INSURANCE COMPANY, Inc., Appellee.
No. J-164.
District Court of Appeal of Florida. First District.
March 26, 1968.
Rehearing Denied April 16, 1968.
Roderic G. Magie of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Carey, Dwyer, Austin, Cole & Selwood, Miami, for appellee.
WIGGINTON, Chief Judge.
Appellee, Shelby Mutual Insurance Company, brought this action seeking a judicial declaration of its rights under an insurance policy issued by appellant, Hartford Accident and Indemnity Company. From a declaratory decree in favor of Shelby, Hartford has appealed.
This controversy is between two insurance companies and involves a question of which one is obligated to pay a judgment recovered by an employee of a company insured by Hartford against a company insured by Shelby. The answer to the question depends upon the proper construction to be placed upon the provisions of the insurance policy issued by Hartford to its insured.
The evidence in the record, and the reasonable inferences which may be drawn from it, reveal the following salient facts which do not appear to be in dispute. One Ralph C. Travis was employed as a truck driver for Georgia, Florida, Alabama Transportation Company, a certificated common carrier. In the course of his employment he was engaged in the delivery of a 2,000 pound cubicle of electrical switching equipment to the consignee, Acme Electric Company, Inc. Acme was an electrical subcontractor engaged in the performance of a subcontract to furnish the labor, materials, and equipment necessary to complete the electrical work called for in the plans and specifications for the construction of a building to become a part of Pensacola *466 Junior College on premises owned by the Escambia County School Board. Acme's subcontract was with Dyson Construction Company, the general contractor under contract with the school board to construct the building in accordance with the plans and specifications furnished by the owner.
On the day in question Travis drove the GFA truck to the job site where the building in question was under construction, for the purpose of delivering to Acme the cubicle of equipment owned by Acme which was to be incorporated in the contract. Acme's employees entered the van of the truck for the purpose of unloading the shipment, and while in the process of accomplishing this purpose they so negligently performed their duties as to cause the cubicle to topple over onto Travis. Travis brought suit against Acme for damages resulting from the personal injuries suffered by him which proximately resulted from the alleged negligence of Acme and its employees. This suit was defended by Shelby under its comprehensive general automobile policy issued to defendant Acme. Judgment was ultimately recovered by Travis, which judgment is now pending on appeal to this court.
After issue, but prior to the commencement of the trial in the case of Travis against Acme, Shelby brought this suit praying for a declaration of its rights as against Hartford insofar as insurance coverage is concerned, and a determination as to which party is obligated to defend Acme in the suit pending against it by Travis, and for such other relief to which it may be legally entitled.
The insurance policy issued by Hartford to its insured, GFA, is a comprehensive general automobile liability policy. By the terms of this policy, the usual automobile liability insurance coverage is extended to the named insured, and to anyone using the insured's vehicle with its permission. The term "use" is defined in the policy to include both the loading and unloading of an automobile.
It is Shelby's position that under the foregoing provisions of the policy issued by Hartford to GFA, Acme's employees were using the GFA truck at the time of the accident with the permission of the insured, GFA, since they were engaged in the process of unloading from it the shipment consigned to Acme. Shelby urges that since coverage is extended to Acme's employees, then the Hartford policy is primarily liable for the damages suffered by Travis, and that Shelby as the insurer of Acme is liable under the nonowned automobile provisions of its policy for only such excess portion of the judgment as may remain after Hartford's liability under its policy is exhausted. Because of the matters hereinafter discussed, we do not deem it necessary to reach or pass upon the foregoing contention urged by Shelby in support of the decree appealed.
The Hartford policy issued to its insured, GFA, contains an endorsement entitled "Limitation of Additional Interests  Loading and Unloading," which is in the following words, to wit:
"It is agreed that the insurance for Bodily Injury Liability and Property Damage Liability does not apply to injury, sickness, disease, death or destruction which arises out of the loading or unloading of an automobile if the accident occurs on premises (including the ways immediately adjoining) owned, rented or controlled either by the person or by the employer of the person against whom claim is made or suit is brought for such injury, sickness, disease, death or destruction. * * *"
Under the terms of the above-quoted exclusionary endorsement forming a part of the Hartford policy, it seems clear and unambiguous that insurance coverage for bodily injury damages does not extend to any injury arising out of the loading or unloading of an automobile owned by the insured if the accident occurs on premises owned, rented, or controlled either by the person or by the employer of the person against whom suit is brought for such injury. *467 It is because of this exclusionary clause that Hartford contends it is not obligated to defend the suit against Acme, nor is it liable for payment of the judgment secured by Travis against Acme since Travis' injuries occurred while the GFA vehicle was being unloaded on premises controlled by Acme against whom suit was brought for such injuries. It is Shelby's position that the exclusionary clause is not applicable to the facts in this case because the premises on which the truck was being unloaded were not controlled by Acme within the meaning or intent of the exclusionary provision of the policy.
From the foregoing it appears that our decision narrows itself to the question of whether under the facts in this case it must be held as a matter of law that the premises on which the GFA truck was being unloaded at the time Travis suffered the injuries for which he sued Acme were premises controlled by Acme within the purview of the exclusionary clause here considered.
In passing upon this issue, and in placing its interpretation upon the exclusionary endorsement of the policy with which we are concerned, the trial court in the memorandum rendered by it held:
"Extensive research has not revealed any authority construing the disputed provision of the endorsement, and the Court must look to the language used to determine the underwriting intent. `Owned' and `rented' have particular and specific meaning. `Controlled' does not. Applying usual rules of construction, `controlled' should not be interpreted in its widest extent but should be construed to mean the same kind or class as the specific words. `Owned' and `rented' involve and denote proprietary interests, and `controlled' must have been intended to apply only to similar situations of the same general kind or class. In other words, it must have been intended to apply to proprietary interests. If the word `controlled' is construed in that context, it is obvious that neither Acme Electric nor Dyson Company controlled the premises or property adjacent to the building being erected."
In reaching the conclusion it did the trial court equated the meaning of the term "controlled" with the terms "owned" and "rented," and held that it connoted a proprietary as distinguished from a possessory interest in the premises on which the accident occurred. In so interpreting the word "controlled" the trial court found from the facts before it that neither Dyson Company as the general contractor, nor Acme as the electrical subcontractor, controlled the premises on which GFA's truck was being unloaded at the time Travis was injured, and that because of this the exclusionary clause appearing in Hartford's policy was inapplicable and not sufficient to avoid liability.
The record contains the specifications relating to the construction of the building for the Board of Public Instruction of Escambia County, which specifications were incorporated in and form a part of the general contract between the owner and Dyson, the general contractor. These specifications, and the general conditions of the contract, place upon the contractor the duty of maintaining adequate protection for the work under the contract during construction, and to protect the owner's property from injury or loss arising in connection with performance under the contract. Such provisions require the contractor to adequately protect property adjacent to that on which the construction is to take place, to take all necessary precautions for the safety of employees and others on the work, and to comply with all provisions of law designed to prevent accidents or injuries to persons on, about, or adjacent to the premises where the work is being performed. It is our construction of the general conditions and specifications of the contract that the contractor is granted possessory rights in and control over the premises upon which the building is to be constructed, as well as the premises adjacent thereto which *468 are necessarily required for use in connection with the construction.
The contract documents further delineate the relations of the contractor and subcontractor, and bind the subcontractor to assume toward the contractor all the obligations and responsibilities that the contractor, by the agreement, general conditions of the contract, and specifications, assumes toward the owner. We construe these provisions of the contract to grant to the subcontractor such possessory rights in and joint control over such part of the premises where the construction of the building takes place as may be required in order to permit the subcontractor to fully discharge its obligations under its agreement with the general contractor.
In Pacific Employers Insurance Company v. Hartford Accident and Indemnity Company[1] a public liability insurance policy issued to a general contractor contained an exclusion which provided that the policy did not apply to automobiles while away from the premises owned, rented, or controlled by the insured. It was contended in that case that the insured contractor did not own, rent, or control the premises on which it was engaged in the performance of its general contract with the owner and, therefore, the claim against it for injuries arising out of an accident occurring on the premises where the contract was being performed was excluded from coverage under the policy. In that case the contract documents and specifications imposed upon the contractor the responsibility for management and supervision of the entire construction project; for the performance of the work; for the protection of the work and the safety of persons and equipment entering or on the work. In holding that under these circumstances the general contractor "controlled" the premises on which construction under the contract was in progress within the meaning and intent of the exclusionary clause of the insurance policy, the Circuit Court of Appeals held:
"The word `control' has no strict or technical definition which necessarily excludes all others. Black's Law Dictionary (4th Ed.), p. 399, defines `control' as `Power or authority to manage, direct, superintend, restrict, regulate, direct, govern, administer, or oversee.' It is said in Rose v. Union Gas & Oil Co., 6 Cir., 1924, 297 F. 16, 18, `The word "control" does not import an absolute or even qualified ownership. On the contrary it is synonymous with superintendence, management, or authority to direct, restrict or regulate.' * * *"
We are of the view that on the authority of the foregoing decision it must be held that in the case sub judice Dyson, the general contractor, controlled the premises on which the building called for in its contract was being constructed pursuant to the possessory interest granted it under the general conditions and specifications of its contract with the school board.
In American Fidelity and Casualty Company v. Traders and General Insurance Company[2] a general contractor held a policy of automobile liability insurance which contained an exclusionary clause similar to the one involved in the Pacific Employers Insurance Company case, supra, and which provided that the coverage under the policy did not apply to automobiles owned by the insured while away from the premises owned, rented, or controlled by the insured. The accident in that case occurred on premises being used by the general contractor in the performance of its contract with the owner. The contractor had no proprietary interest in the premises since it neither owned nor rented them. In that case the court held that the word "controlled" should be interpreted to mean authority to manage, direct, govern, administer or oversee, and not to connote a proprietary interest in the *469 premises. On the basis of such holding the court concluded that the exclusionary clause was not applicable because the accident occurred on premises "controlled" by the named insured.
The American Fidelity & Casualty Company decision, supra, discussed above, was followed by the Circuit Court of Appeals of the Fifth Circuit in the case of Southwestern Indemnity Co. v. National Surety Corp.[3] in which the court was called upon to interpret a similar exclusionary provision of an automobile liability insurance policy under facts substantially similar to those in the American Fidelity case.
The question of whether control by the general contractor of premises on which a construction project is in progress is jointly shared with subcontractors performing part of the work was involved in the case of D'Aquilla Bros. Contracting Co. v. Hartford Accident and Indemnity Company.[4] That case, like the case sub judice, involved a dispute between two insurance companies as to the coverage afforded by their respective policies of insurance. A judgment was secured by an injured workman against a subcontractor for the latter's negligence while loading a truck on the construction site in the performance of its subcontract. The subcontractor held a policy of liability insurance which contained an exclusionary clause providing that coverage under the policy did not apply to the loading of automobiles while away from premises owned, rented, or controlled by the insured. The insurance company sought to escape liability on the contention that the subcontractor neither owned, rented, nor controlled the premises on which the accident occurred, and therefore the accident occurred away from premises controlled by its insured. In rejecting this contention and holding the exclusionary clause to be inapplicable because the premises on which the accident occurred were "controlled" by the subcontractor while engaged in the performance of its subcontract, the Supreme Court of New York said:
"Obviously, such work would very often be performed on premises not owned or rented by the insured. The parties must have intended the word `control' to mean such control as would enable the insured to do its work. In other words, `control' as used in this policy meant not necessarily exclusive possession, but such measure of control, jointly with others, as was consonant with the work to be done. Otherwise, Hartford's policy would be practically meaningless. It is elementary that any ambiguity in the policy must be resolved against Hartford."
Based upon the foregoing authorities, we conclude and so hold that from the record before us the subcontractor, Acme, shared joint possessory control with the general contractor, Dyson, in and over the premises on which the shipment of electrical equipment consigned to Acme for use in the performance of its subcontract was being unloaded from the GFA truck. For this reason the exclusionary clause contained in the Limitation of Additional Interests endorsement forming a part of the Hartford policy is effective and excludes coverage for the accident out of which the damages suffered by Travis arose. This is so for the reason that such accident occurred on premises jointly controlled by Acme who is the person against whom Travis made his claim and brought suit for his injuries. The declaratory decree appealed herein is reversed and the cause remanded for further proceedings consistent with the views expressed herein.
CARROLL, DONALD K., and SPECTOR, JJ., concur.
NOTES
[1] Pacific Employers Insurance Company v. Hartford Accident and Indemnity Company, (9th Cir.1955) 228 F.2d 365.
[2] American Fidelity & Casualty Company v. Traders & General Insurance Company, (1959) 160 Tex. 554, 334 S.W.2d 772.
[3] Southwestern Indemnity Co. v. National Surety Corp., (5th Cir.1960) 277 F.2d 545.
[4] D'Aquilla Bros. Contracting Co. v. Hartford Accident and Indemnity Company, (1959) 22 Misc.2d 733, 193 N.Y.S.2d 502, 506, 507.