461 P.2d 517

**GENERAL INSURANCE COMPANY OF AMERICA, a corporation, Appellant,**

v.

**AMERICAN EMPLOYERS' INSURANCE COMPANY, a corporation, Appellee.**

**No. 2 CA–CIV 529.**

Court of Appeals of Arizona.
Division 2.
Dec. 1, 1969.

Robertson & Fickett, by Leonard Everett, Tucson, for appellant.

Mesch, Marquez & Rothschild, by Douglas H. Clark, Jr., Tucson, for appellee.

HOWARD, Judge.

This is an action for declaratory judgment involving two insurance companies raising the issue as to which one is obligated to pay the amount of the settlement of a lawsuit.

The C. J. Rounds Construction Company was the prime or general contractor in constructing a flood control channel along what is known as Julian Wash in Tucson, Arizona. The entire project was under the auspices of the United States Corps of Engineers, and they prepared the plans and specifications and let the construction contract.

It was a joint project involving the United States Government and Pima County and they both contributed to the cost thereof. Upon completion of the project, the County was to take control and become responsible for the repair, maintenance and use of the channel. In order to build the channel, Pima County acquired a right-of-way for the channel and also acquired a thirty foot wide "construction easement," from the owner of the adjacent land. The "construction easement" was to terminate upon completion of the project.

On December 16, 1964, the work on the channel had been completed and a final

inspection of the project had been made by the project engineer for the Corps of Engineers. Present at the time of the inspection were the Pima County Engineer, the Assistant Pima County Engineer, the owner of C. J. Rounds Construction Company, his project manager, and the construction inspector for the Corps of Engineers. The project engineer, Mr. Bushmeyer, had the authority to verbally accept or reject the completed project.

On the date of the final inspection, namely December 16, Mr. Bushmeyer found that some minor "dress-up work" remained to be finished and it was completed that day. All that remained at or around the construction site on December 16th were two pieces of pipe. The general contractor was requested by the project engineer to remove the pipe. The general contractor, then and there, made arrangements to remove the pipe.

The project engineer testified that as far as he was concerned he had "accepted" the work as being completed on that date and notified the C. J. Rounds Construction Company's project manager of such "acceptance." After December 16, 1964, there was no further work to be done on the project by the general contractor.

Although the formal acceptance is in writing and by the district engineer, the project engineer makes a recommendation to the district engineer in writing as to whether the project should be accepted. On December 21, 1964, three days after the accident, Mr. Bushmeyer recommended that the project be accepted as of December 16, 1964, and recommended that the County be notified that it was responsible for the project from the latter date on.

On December 18, 1964, Roy R. Rodriguez, a County employee, was instructed to pick up the pipe. He drove the County truck to the yard of the general contractor, C. J. Rounds Construction Company, at Ajo and Park in Tucson. He then followed the crane, driven by an employee of the general contractor, to a place near the channel where the pipe was located. The only material in the channel area were the two pieces of pipe. As the pipe was being loaded onto the County truck by the crane operator, Mr. Schock, the crane came into contact with overhead electric wires causing Mr. Rodriguez to be electrocuted.

The evidence shows that, during the construction of the project, the general contractor used the premises [1] where the accident occurred for the following purposes: for ingress and egress of trucks, tractors and other heavy construction equipment, numerous times daily; for storage, for extended periods of time, of large cement pipe owned and used by it in the construction of the project—the accident occurred while loading some of this very pipe; for storage of construction steel or rebar steel; as a staging and construction area for forms it used in the construction of the project; as a parking area for employees of the general contractor while working on the job; and for other miscellaneous jobs connected with the overall project.

The general contractor was asked to and did water down the premises because of the accumulation of dust, on several occasions, sometimes twice a day. The general contractor's employees ate their lunch on the premises and the general contractor parked its heavy equipment on the premises over weekends.

The plans and specifications of the project required the filling, leveling and grading of the premises, and this was the responsibility of the general contractor. The leveling, grading and filling of the premises during construction of the project was performed by the general contractor and its subcontractor Sundt. The material used as fill in the leveling process was material left over as a result of the excavation of the channel by the general contractor.

The "job site" of the project included the premises. The general contractor of the project, according to practice and cus-

1. The land where the accident occurred was adjacent to the drainage channel and was owned by a man named Agron.

tom in the trade, is in control of the "job site." It was the responsibility of the general contractor, pursuant to the contract, to clean up the premises surrounding the construction site and to remove unused or excess material in that area, which included the pipe. In order to have the job finally accepted by the Corps of Engineers, the pipe had to be removed. On December 16, 1964, if the general contractor had not made arrangements with Pima County to haul away the pipe, the project engineer would not have recommended acceptance of the job as having been completed on that day.

An employee of the general contractor supervised and directed the loading of the pipe onto the truck at the time of the accident. The general contractor had the final word as to the operation and activities on the construction site and ran the entire project subject only to the Corps of Engineers and their rules and regulations.

Mr. Rodriguez' heirs filed an action separate from this one, in the Superior Court of Pima County against the appellant's insureds, the C. J. Rounds Construction Company and John A. Schock, the crane operator, for the wrongful death of Rodriguez. The appellant, General Insurance Company, settled the claim of Rodriguez for the amount of $47,500.00 plus attorneys' fees and costs in the sum of $1,404.25. C. J. Rounds Construction Company and John A. Schock were insured by the appellant. Appellee was the insurance carrier for Pima County.

At the beginning of the trial, counsel stipulated that John A. Schock was the crane operator and an employee of the general contractor at the time of the accident; that he was operating the crane to load certain pipe onto a truck owned by Pima County; that the premises, on which the death of Mr. Rodriguez occurred, were not rented by the general contractor; that the amount paid by the appellant to the heirs and claimants of Mr. Rodriguez was $47,-500.00 plus attorneys' fees and costs of $1,-404.25; that the crane operator was an "in-

sured" under the automotive liability provisions of appellee's insurance policy; that said policy contained an exclusion with regard to premises owned, rented, or controlled by the person or employer of the person against whom the claim is made; and that if the exclusion is not applicable and if there is insurance afforded under appellee's policy, then the insurance afforded the crane operator is applicable under the loading and unloading provisions of appellee's policy.

The lower court granted judgment in favor of appellee, American Employers' Insurance Company and against appellant, General Insurance Company of America. The appellant contends that the trial court erred in finding that the appellant's insured, the general contractor, was in control of the premises upon which the loss took place, thus making applicable the exclusion in appellee's policy. Appellant further contends that the exclusion is not applicable and that since the appellee's policy provided primary coverage, the appellee was liable for the entire loss. The issue is whether or not the general contractor was "in control" of the premises the day the accident occurred.

The policy of insurance that the appellee issued to the Board of Supervisors of Pima County contained a loading and unloading clause. This clause, however, had the following exclusion:

"It is agreed that the insurance for bodily injury * * * does not apply to * * * death * * * which arises out of the loading or unloading of an automobile, if the accident occurs on premises (including the ways immediately adjoining) owned, or rented or controlled either by the person or by the employer of the person against whom claim is made or suit is brought for such * * * death. * * * *"

To support its contention that the property was not controlled by its insured, the general contractor, on the day of the accident, the appellant contends that the project had already been completed and ac-

cepted by the Corps of Engineers; that there was no further work to be done in the area by its insured; and further, that other subcontractors also used the area where the accident took place, including Pima County itself.

The word "control" has no strict or technical definition which necessarily excludes all others. It means power or authority to manage, direct, superintend, restrict, regulate, direct, govern, administer or oversee. Pacific Employers Insurance Company v. Hartford Accident and Indemnity Company, 228 F.2d 365 (9th Cir. 1955). The word "control" as used in the policy now being considered by the court does not import a proprietary interest. Hartford Accident and Indemnity Company v. Shelby Mutual Insurance Company, 208 So.2d 465 (Fla.App.1968). Accord, Rose v. Union Gas & Oil Company, 297 F. 16 (6th Cir. 1924); American Fidelity & Casualty Company v. Traders & General Insurance Company, 160 Tex. 554, 334 S.W.2d 772 (1959).

The word "control" as used in this policy does not mean exclusive possession, but such measure of control, jointly with others, as is consonant with the work to be done. Hartford Accident and Indemnity Company v. Shelby Mutual Insurance Company, supra. We believe it is useless to attempt a definition of the word "control" that would be applicable to all cases involving the same policy phrase since the very nature of the word itself will require ad hoc determinations.

The appellant relies very strongly upon the fact that the work had been completed and that the project engineer had accepted the project as completed two days prior to the accident.

We view the facts in the light most favorable to the holding of the court below. We believe that the trial court could reasonably have concluded that the work was not actually accepted until December 21, 1964, the day the project engineer made his recommendations of acceptance; that in loading the pipe the general contractor was fulfilling its obligations under the contract; that at the time of the accident the entire loading operation was being supervised by an employee of the general contractor; and that as between the general contractor and Pima County, the general contractor had the authority to regulate, manage, oversee and, therefore, control the area where the accident occurred.

The appellee has raised other defenses which we do not deem necessary to discuss in view of our disposition of this case.

Judgment affirmed.

HATHAWAY, J., and JOHN A. McGUIRE, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.