CONTINENTAL OIL COMPANY, a
corporation, Appellee,

v.

NATIONAL FIRE INSURANCE COMPANY
OF CONNECTICUT, a corporation, and
Great American Insurance Company, a corporation, Appellees,

and

Maryland Casualty Company, a
corporation, Appellant.

No. 46765.

Supreme Court of Oklahoma.

Sept. 16, 1975.

Rehearing Denied Nov. 12, 1975.

Granville Tomerlin, Tomerlin, High & Patton, Oklahoma City, Edward R. Adwon, Continental Oil Co., Stamford, Conn., for appellee, Continental Oil Co.

Burton J. Johnson, Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, Newton Gresham, Fulbright & Crooker, Houston, Tex., for appellees, National Fire Ins. Co. of Connecticut and Great American Ins. Co.

Bert Cotton, C. Raymond Nelson, Stuart Cotton, Rein, Mound & Cotton, New York City, Green & James, Oklahoma City, for appellant, Maryland Casualty Co.

LAVENDER, Justice:

Continental Oil Company (Continental), plaintiff-appellee, brought this action for loss under four insurance policies. National Fire Insurance Company of Connecticut and Great American Insurance Company, defendants-appellees, as part of Oil Insurance Association (OIA) wrote two of the policies as to fire and extended coverage, including explosions. These are like policies with each company carrying half of any liability thereunder. Their positions and defenses under the policies are the same. Great American Insurance Company (Great American) also wrote a policy as to business interruption loss resulting from its covered risk. Maryland Casualty Company (Maryland), appellant-defendant, wrote a boiler and machinery policy covering physical loss, other than fire, and business interruption loss resulting from its covered risk. Trial was to a jury. An instructed verdict was returned for fire damage under the OIA policies by agreement. That portion of the litigation is not in dispute and not on appeal. No other verdict was returned against the OIA companies under their extended coverage in the fire policies or against Great American as to business interruption loss. The jury allowed recovery to Continental and returned a verdict against Maryland for physical damage, other than fire, and business interruption loss under the boiler and machinery policy. Maryland appeals.

Continental owned and operated an alfol alcohol chemical plant at Lake Charles, Louisiana. A catastrophe occurred January 14, 1969, at that plant. An integral part of the plant was a "batch growth reactor." An integral part of the reactor was a "heater-cooler unit." There was a separation from the unit of its north head. The head was propelled in one direction with the remainder of the unit propelled in the opposite direction. These propelled objects crashed into other parts of the unit and reactor resulting in much physical damage. On separation the liquid "batch," under pressure in the heater-cooler unit, escaped and ignited upon contact with the air. A fire and fire damage resulted. The extensive damage to the reactor caused substantial "down time" for the entire plant.

Continental sought to recoup its losses under insurance policies in effect at that time. Action was brought against the companies issuing the OIA policies and Maryland. Service was made on Maryland through the Oklahoma Insurance Commissioner, the Secretary of State, and its resident manager. The trial court overruled Maryland's objections to service and jurisdiction.

The parties agreed to fire damage of $991,178.99; physical damage, exclusive of fire, of $678,419; and business interruption loss of $3,876,772 of which $670,860 came in the first thirty days. The parties could not agree on the cause of the catastrophe, and as to what policies of the defendants insured the physical damage and business interruption loss. There was no real dispute as to the recovery of fire damage under the OIA policies. Extensive engineering and technical testimony and evidence

were introduced at trial. Contentions and evidence conflicted. Continental generally contended the reactor suffered an accident caused by a mechanical breakdown of the north head of the heater-cooler unit. This was followed immediately by the liquid "batch" being released under pressure into the air and almost instantly catching fire. It sought recovery on all policies with Maryland's liability resulting from the mechanical breakdown and OIA's liability resulting from the expulsion of the "batch" and fire. Maryland contended the explosion or accident was not caused by a mechanical breakdown but was caused by excessive internal pressure created through an uncontrolled reaction. OIA contended any explosion was caused by a mechanical breakdown and thereby not included under its coverage. The jury found the fact issues in favor of Continental as against Maryland. It allowed recovery for physical damage, exclusive of fire, and business interruption under Maryland's policy. It refused recovery against the OIA companies for physical damage, other than fire, and for business interruption loss.

Maryland attacks jurisdiction over it through the service had here. It argues the Insurance Commissioner was not its service agent *in this case* under 36 O.S. 1971 § 621(A)[1] for the cause of action did not arise from Maryland's transaction of business in Oklahoma. It contends its poli-cy was not negotiated, issued, or delivered in Oklahoma. The loss occurred outside the state and to insured property located outside the state. Continental points to other facts showing the cause of action did arise in Oklahoma. Maryland would negate any alternate method of service by making service exclusively through the Insurance Commissioner under sub-section (B).[1]

■ The exclusiveness of service on the Insurance Commissioner as service agent is limited to *such process* as provided for in subsection (A). The exclusive feature of (B) effects only the service process available by (A). We need not decide if the instant cause of action arose from Maryland's transaction of business in Oklahoma. If it did, the Insurance Commissioner was the proper service agent. There was jurisdiction. If the cause of action did not arise from a transaction in Oklahoma and the Insurance Commissioner was not a proper service agent, then that method was not exclusive. There was other valid service.

At all times involved in the present case, Maryland was doing business within the State of Oklahoma. It does not contend otherwise. Maryland denied the Insurance Commissioner was its service agent for this case. 18 O.S.1971 § 1.204a[2] allows service on the Secretary of State if the

---

1. 36 O.S.1971 § 621(A) and (B) read, in part:

"A. Each authorized foreign or alien insurer shall appoint the Insurance Commissioner as its *attorney to receive service* of legal process issued against it in Oklahoma *upon any cause of action arising from its transaction of business in the State of Oklahoma.* The appointment shall be irrevocable, shall bind any successor and shall remain in effect as long as there is in force in Oklahoma any contract made by the insurer or obligations arising therefrom.

"B. Service of *such process* against a foreign or .alien insurer shall be made only by service of process upon the Insurance Commissioner. * * *"
(Emphasis added.)

2. 18 O.S.1971 § 1.204a reads, in part:
"In all cases where a cause of action has accrued or shall accrue to any person * * * while a foreign corporation was doing business within this state and such foreign corporation *has no registered agent* in this state *upon whom service* of summons * * * *may be had,* an action may be filed against such foreign corporation in any county in the state and service of summons or other process may be had upon the Secretary of State, and such service shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject matter whether sitting in the county where the Secretary of State is serviced or elsewhere in the state."
(Emphasis added.)

foreign corporation has no registered agent and the cause of action occurred while the foreign corporation was doing business within the state.

Maryland would not apply the Business Corporation Act, 18 O.S.1971 § 1.1 et seq., under its scope set out in § 1.3. The Act's applicability is excepted as to "special provisions in relation to any class of corporations inconsistent with provisions * * *." That section also includes:

"The provisions of this Act relating to domestication of foreign corporations and providing requirements and duties with relation to such corporations shall not apply to insurance companies now or hereafter qualified to transact business in Oklahoma, which are subject to jurisdiction of the Insurance Commissioner of this State."

If Maryland is correct, that the cause of action is one not arising from a transaction in Oklahoma, then the Insurance Commissioner does not have jurisdiction over the coverage. The Oklahoma Insurance Code, 36 O.S.1971 § 101 et seq., in Art. 6, Authorization of Insurers, at § 606(D)[3] excludes from its applicability insurance coverage on a subject of insurance not located or not expressly to be performed in Oklahoma at time of issuance, and solicited, written, and delivered outside the state. The Business Corporation Act and § 204a is then applicable.

There was proper service on and personal jurisdiction over Maryland either through the Insurance Commissioner or the Secretary of State. The trial court was correct in overruling Maryland's objection to jurisdiction.

Maryland couches its appeal on issues as a matter of law.[4] It does not argue the insufficiency of the evidence supporting the jury's determination of facts against it. The jury rejected any theory of excessive internal pressure caused by a run-away batch reaction.

A simplified description suggests this. The heater-cooler was generally a cylinder in shape. Its ends were circular heads with threads completely around it on the thick dimension. The head screwed into the cylinder. The necessary air-tight seal was accomplished by a series of jack-screws placed through, around, and just inside the outer circumference of the head. These jack-screws exerted pressure on a back-up ring and gasket. Minor leaks in the seal were corrected from time to time by tightening the jack-screws. The tighter the jack-screws the more counter stress was placed on the threads connecting the head and cylinder. There was evidence these threads broke. There was also evidence that the head, subject to the ordinary internal operating pressure and the broken threads, moved enough to start a chain reaction of escaping liquid under pressure, propulsion of the head and cylinder in opposite directions, an explosion, and fire. By its verdict, the jury found the heater-cooler was a machine, and there was an explosion caused by a mechanical breakdown of that machine.

Maryland urges, as a matter of law, (1) *exclusion* under its policy[5] for the "acci-

---

3. 36 O.S.1971 § 606(D) reads:
   "D. As to an insurance coverage on a subject of insurance not resident, located, or expressly to be performed in Oklahoma at time of issuance, and solicited, written, and delivered outside Oklahoma, no such authority shall be required of an insurer as to subsequent transactions in Oklahoma on account thereof, and *the provisions of this code shall not apply to such insurance or insurance coverage*, except for the purpose of premium tax requirements."
   (Emphasis added.)

4. Black's Law Dictionary, Fourth Edition, p. 1130 defines:
   "Matter of Law. Whatever is to be ascertained or decided by the application of statutory rules or the principles and determinations of the law, as distinguished from the investigation of particular facts, is called 'matter of law.'"

5. Maryland's policy provides, in part:
   " 'Accident' shall mean a sudden and accidental breakdown of the object or a part thereof which manifests itself at the time of

dent" was an "explosion" caused by other than a "mechanical breakdown" to something other than a "machine"; and (2) *inclusion* under the OIA policies [6] as an "explosion" not excepted from coverage as a rupture of moving parts of machinery caused by a mechanical breakdown. It argues the heater-cooler unit was the "object" insured as an "unfired vessel under pressure." The entire reactor section was not insured under its policy. The reactor contained moving parts, i.e. pumps. It was a machine. The heater-cooler contained no moving parts. By law, it was not a machine. Without moving parts there could be no machine and no explosion caused by a mechanical breakdown.

Trial court's instruction No. 7 gave to the jury from Webster's Dictionary the generally accepted dictionary definitions of certain words as non-obligatory guidelines. That instruction read in part:

" 'Machine'—an assemblage of parts that are usually solid bodies but include in some cases fluid bodies or electricity in conductors and that transmit forces, motion, and energy one to another in some predetermined manner and to some desired end.

'Mechanical breakdown'. 'Mechanical' means—of, pertaining to, or concerned with, machinery or manual operations; made by machinery or with tools; done as if by a machine; pertaining to, governed by, or in accordance with, mechanics; pertaining to the quantitative relations of force and matter, as distinguished from mental, vital, chemical, etc.; of the nature of a machine. 'Breakdown' means to break (anything) so as

to force or cause it to fall downward; to demolish; destroy; to stop (a mill or a machine) because of an accident."

These specific terms were not defined by contract in the policies. The instruction allowed the jury to use their every day understanding to these defined terms.

■ In operation, the heater-cooler was an assemblage of parts. A portion of that assemblage was solid material. It was held partly together with the simplest of machines, the screw. Part of that assemblage was liquid under pressure. Forces were being transmitted for a predetermined and desired end. Ordinary operating internal pressure was generating a force moving against the head. The movable jack-screws in the head were generating a force moving through the back-up ring and gasket against the internal pressure to establish an air-tight seal. The internal pressure and the jack-screws generated stresses and forces moving against threads holding the head in place. This was a machine. That machine was alive and moving. It was capable of having a mechanical breakdown. There was evidence to find these threads broke under mechanical stress generated by these moving forces and parts. There was a mechanical breakdown.

Webster's Third New International Dictionary, page 2040, defines the word "screw" as:

"a simple machine of the incline plane type consisting of a spirally grooved solid cylinder and a correspondingly grooved hollow cylinder of equal dimensions in which the applied force acts in a spiral path along the grooves while force

---

its occurrence by physical damage to the object that necessitates repair or replacement of the object or part thereof; but, accident shall not mean

\* \* \* \* \*

H) The explosion of an object other than:

\* \* \* \* \*

"2. Any machine when such explosion is caused by centrifugal force or mechanical breakdown."

6. OIA's policies provide, in part:

\* \* \* \* \*

" \* \* \* this policy is extended to insure against direct loss by \* \* \* EXPLOSION \* \* \* except as hereinafter provided.

\* \* \* \* \*

"The following are not explosions within the intent or meaning of these provisions:

\* \* \* \* \*

"(c) Rupture or bursting of rotating or moving parts of machinery caused by \* \* \* mechanical breakdown, \* \* \*."

acts along the axis of the cylinder—compare JACK-SCREW."

It defines "moving," page 1480, as:

"That is marked by or capable of movement."

The head was designed for (marked by) and made capable of movement for easy access to the inner tubing of the heater-cooler by threads. The threaded head screwed on or off the cylinder. This required its threads to be mated with cylinder threads. Its threads moved along the spiral grooves of the cylinder as a simple incline plane type machine. There was a rupture of these moving parts.

The OIA policies with their extended coverage insured against direct loss by explosion. Express language delineated certain occurrences as not intended or meant as explosions under the policies. The explosion occurring in this catastrophe was not included for there was a rupture of moving parts of a machine caused by a mechanical breakdown. The OIA policies did not require the rupture to take place while the parts were in the act of moving. The rupture did take place while the machine (heater-cooler) was in operation, under ordinary pressure and subjecting these threads to moving forces. They broke. The resulting explosion was not included as an explosion by the OIA policies.

■■ In determining the liability under an insurance policy its terms are accepted in their plain and ordinary sense. Exceptions inserted in the policy which attempt to exempt from certain specified risks are to be construed in case of doubt strictly against the insurer. *Great American Ins. Co. of New York v. O. K. Packing Co.*, 202 Okl. 231, 211 P.2d 1014 (1949).

As a matter of law, we cannot say the heater-cooler in operation was not a machine, it had no moving parts, a machine requires moving parts, there was no mechanical breakdown of that machine, the catastrophe was not an explosion caused by a mechanical breakdown, the trial court misdefined the terms given to the jury, the jury misapplied the terms, or Maryland's policy excluded the accident.

By this opinion Maryland is held liable for physical damage, exclusive of fire, with no liability to the OIA companies for that same damage. Through an agreed instructed verdict, the OIA companies were held liable for the fire damage. Great American, an OIA company, insured against business interruption loss caused by fire. Maryland insured against business interruption loss caused by its coverage, now determined to be the physical damage other than fire. The parties stipulated the total business interruption loss was $3,786,272 with $670,860 occurring the first thirty days. The jury returned a verdict for business interruption loss against Maryland but not against Great American.

■ Maryland seeks relief from sole liability under its policy as to business interruption loss. It argues, in the pretrial stipulation, the parties agreed either the fire damage or the non-fire damage would have caused the same down-time. Maryland removes as a fact determination what portion of down-time was caused by fire and what portion of down-time was caused by non-fire damage. Its brief says, "No proof was offered, and in view of the stipulation between the parties none was required, as to what part of the interruption was due to fire damage and what part to non-fire damage."

In the pre-trial order, the parties stipulated:

"The period of time and expedition expense required to restore the plant to full operational capacity by reason of fire and non-fire physical damage, would have been the same if no fire physical damage had been incurred."

We differ with Maryland as to the import of the stipulation. Without fire damage, the down-time was the same. There is no stipulation that without non-fire damage, the down-time would be the same. There was no fact determination that part of the interruption was due to fire damage

and part of the interruption was due to non-fire damage. It is difficult to find the fire damage contributed to the down-time, where that same down-time would have occurred without fire damage.

Continental filed a separate appeal as to that portion of the jury verdict denying coverage under the OIA policies. Although a separate appeal, there was one jury trial and one catastrophe. The positions of all the parties and their supporting briefs were examined and studies in all the appeals before entering this decision and promulgating this opinion.

Affirmed.

All of the Justices concur.