**H. C. PRICE COMPANY, Plaintiff,**

v.

**COMPASS INSURANCE COMPANY, Defendant.**

**Civ. A. No. 3–79–0853–H.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 16, 1980.

Gerald W. Benson, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for plaintiff.

Royal H. Brin, Jr., Strasburger & Price, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

This is a declaratory judgment action by an insured, Plaintiff H. C. Price Company ("Price"), against its insurance carrier, Defendant Compass Insurance Company ("Compass"), to recover under a personal injury liability policy. Price sues for reimbursement of $762,000 [1] paid in settlement of a wrongful death action. Most of the facts involving the wrongful death are not in dispute. The issue for decision is whether an exclusion to the insurance policy—a "watercraft" exclusion—applies to the accident in question.

Both parties have moved for summary judgment. Price's Motion is GRANTED as to Counts I and II; Compass' Motion is DENIED.

The wrongful death occurred in May, 1979, when Neil Hebert's motorboat struck a cable stretched across a bayou in Jefferson County, Texas. Pursuant to a contract

---

1. Price also sues for interest it is paying to finance the settlement, and for attorney's fees and court costs for defending the wrongful death action. Compass has admitted that the settlement was reasonable.

Price was constructing a pipe line on both sides of and across the bayou. Price did not own or lease the land on both sides, but with its employees and equipment did have a right to be there to complete its construction contract.[2] The cable was attached to a tree on one side of the bayou and to a winch located on a flexifloat—a barge-like boat—on the other side of the bayou. The flexifloat was next to the shore with the ramp of the float on the shore. The purpose of the flexifloat was to transport equipment back and forth between the work sites on the opposite sides of the bayou. The cable and winch were used to pull the flexifloat back and forth across the bayou. Less than two weeks after the accident Neil Hebert's widow and unborn child filed a wrongful death action in the federal district court for the Southern District of Texas.

Price had a personal injury liability policy with Compass. The Hebert complaint alleged negligence (by Price) for failure to warn about the cable; Price says that Compass had a duty to defend Price under the policy. After investigating the accident Compass tendered a defense under a reservation of rights agreement. In the reservation of rights Compass contended there would be no coverage if the watercraft exclusion applied to this accident. The watercraft exclusion to the policy states:

"This insurance does not apply to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any watercraft owned or operated by or rented or loaned to any insured, or

(2) any other watercraft operated by any person in the course of his employment by any insured;

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the named insured."

Price refused to agree to the reservation of rights, refused the defense by Compass, and hired its own attorney to defend against the wrongful death action.

A few months after the wrongful death suit was filed, Price settled with the widow and the unborn child for actual damages of $762,000. Because a minor child was involved the federal judge conducted a hearing before approving the settlement. On August 24, 1979, the judge entered a Final Judgment which contained the following recitations of fact:

"[T]he Court . . . after hearing the evidence pertaining to the manner in which the accident occurred . . . finds that (1) Neil R. Hebert was riding in a pleasure motorboat in Hillebrandt Bayou in Jefferson County, Texas, on or about May 19, 1979, (2) the boat in which Neil R. Hebert was riding struck a cable extending across Hillebrandt Bayou, (3) one end of the cable was affixed to a tree on the east bank of Hillebrandt Bayou and the opposite end of the cable was affixed to a winch located on flexofloats [sic] grounded ashore on the west bank of the bayou, (4) the flexofloats were ashore in an area under the control of H. C. Price Co., and its employees for the purposes of constructing a pipe line, and (5) Neil R. Hebert sustained injuries as a result of the accident which lead directly to his death."

Compass says that the uncontroverted facts show that the watercraft exclusion applies and precludes coverage. Price says that the findings in the prior judgment in the wrongful death action are binding upon Compass and conclusively established that the exclusion to the exclusion—for watercraft ashore on premises controlled by Price—applies. Alternatively, Price contends that the depositions, interrogatories, and requests for admission on file establish without dispute that the watercraft exclusion does not apply.

■ The Court concludes that the judgment of the federal court in the prior wrongful death suit is binding upon Compass. The law in Texas and in this circuit is

---

**2.** Two of Defendant's employees did acknowledge Price's right to control the land for the purpose of completing the pipe line. John R.

Frazier deposition at 61; Rene Sears deposition at 82–83.

well-settled that an insurer with notice of a suit and a duty to defend that suit is bound by a judgment in that suit if it fails to defend, and the insurer cannot relitigate material fact issues in a later suit with the insured over coverage. *Ridgeway v. Gulf Insurance Co.*, 578 F.2d 1026, 1029 (5th Cir. 1978) (per curiam); *Ranger Insurance Company v. Rogers*, 530 S.W.2d 162, 166–67 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.). *Ranger* involved facts similar to the facts in this case; the insurer tendered a defense under a reservation of rights agreement, but the insured did not accept, chose to defend itself, and settled the case by a consent judgment. The final judgment in the case *sub judice* was also a consent judgment and included explicit findings of fact about the watercraft exclusion. After hearing evidence the judge found that the flexifloat was ashore, on ground, and on premises controlled by H. C. Price Company. These findings track the relevant language of the exclusion to the watercraft exclusion. Compass cannot collaterally attack this judgment by trying to relitigate these material facts in this forum.[3]

◼ Even if Compass were not bound by the prior judgment, the Court concludes there is no genuine dispute about the material facts relating to the watercraft exclusion of the policy. The material facts are (1) whether the watercraft was "ashore" and (2) whether the premises were controlled by Price. The Court is of the opinion that there is no genuine issue as to either.

The depositions (with photographs of the accident scene), requests for admissions and affidavits show that the flexifloat to which the fatal cable was attached was "ashore on premises . . . controlled by [Price]".[4] Price says the word "ashore" should be given its plain meaning. Courts have used dictionaries to define the ordinary meaning of words in an insurance policy. *American Casualty Co. v. Myrick*, 304 F.2d 179, 183 (5th Cir. 1962); *Ramsay v. Maryland American General Insurance Co.*, 533 S.W.2d 344, 346 (Tex.1976). If language in an insurance policy is susceptible of more than one construction, the court must adopt the construction favoring the insured, particularly as to exclusions. *See Continental Oil Co. v. National Fire Insurance Co.*, 541 P.2d 1315, 1320 (Okl.1975); *Ramsay v. Maryland American General Insurance Co.*, 533 S.W.2d at 349. The various dictionary definitions indicate "ashore" may mean "on" or "to" the shore.[5] This definition fits the testimony of Compass' representatives describing the place and relation of the flexifloat to the shore.[6] The pictures attached to the deposition of Compass' vice-president, John R. Frazier, show the flexifloat on the day after the accident. The flexifloat is up against the shore with a ramp from the flexifloat resting on the ground. Although the bulk of the craft is in the water, the flexifloat was as close to the shore as it

---

3. Texas limits collateral attack on a judgment to challenges against the prior court's jurisdiction or its power to act as a court. *Ranger Insurance Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.).

4. Price argues the exclusion is inapplicable because the injury to Hebert arose out of the cable, and did not "aris[e] out of" the flexifloat. Compass contends the cable was part of the "watercraft" because it was used to pull the flexifloat across the bayou. The Court's disposition based on the "exclusion to the exclusion" makes it unnecessary to reach this argument, but the Court has some doubts about the logic of Compass' position. At the time of the accident the flexifloat was not being used; the purpose of the taut cable was to keep the flexifloat snug against the shore. Rene Sears' deposition at 21, 22, 23; John R. Frazier's dep-

osition at 68, 69, 70. If the cable had been strung between two trees, clearly the watercraft exclusion would not apply. The fact that it was attached instead to a stationary watercraft should make no difference on coverage.

5. Webster's Third New International Dictionary, Unabridged (1966); Webster's New Collegiate Dictionary (1977); Webster's New World Dictionary (1974); Funk & Wagnall's New Practical Standard Dictionary (1954); The Random House Dictionary of the English Language (1973).

6. John R. Frazier's deposition at 68, 69; David L. Young's deposition at 23. The flexifloats were described as "snugged up" to the shore, Frazier's deposition at 39, and "snug into the shore," Sears' deposition at 21, 22–23, 35.

could have been without being completely grounded. Part of the flexifloat—the ramp—was "on" the shore, and the flexifloat was moored "to" the shore.

Without citing any authority Compass contends that "ashore" cannot fit these facts because the parties did not intend the exclusion to apply to any watercraft sitting in the water. However, the court need not look to the intention of the parties "where the terms of a written contract are plain and unambiguous [because] they alone are looked to to ascertain their meaning." *Fidelity & Casualty Co. v. Lott*, 273 F.2d 500, 502 (5th Cir. 1960). Since Price's construction of "ashore" is a permissible construction, the Court must adopt that construction because it is more favorable to the insured. *Id.*

The second material fact relating to the watercraft exclusion is whether the premises to which the flexicraft was moored were controlled by Price. Price's contractual right to be on the premises and its pervasive presence there by virtue of its employees and equipment show Price was controlling or overseeing the premises for the limited purpose of performing under the contract. Control can mean management or authority to manage, direct, govern, administer or oversee. *American Fidelity & Casualty Co. v. Traders and General Insurance Co.*, 160 Tex. 554, 334 S.W.2d 772, 775 (1960). "Control" cannot be synonymous with ownership rights because this construction makes "controlled by" redundant and superfluous in light of the "owned by" phrase in the exclusion. *See General Insurance Co. v. American Employers Insurance Co.*, 11 Ariz.App. 38, 461 P.2d 517, 520 (1969). "Controlled by" must mean something less than ownership but something more than a fortuitous presence on the land. The undisputed facts of this case show Price's presence on the land gave it at least temporary control of the premises.[7] Of course, if "controlled by" is subject to two interpretations, the Court must construe it in favor of coverage.

7. See note 2 *supra.*

8. Count III of the Complaint alleges gross negligence and bad faith against Compass for its

Price's Motion for Summary Judgment is GRANTED on Counts I and II of the complaint, for the $762,000 settlement plus interest, expenses (including attorney's fees), and costs of defending and settling the wrongful death action.[8] Compass' Motion for Summary Judgment is DENIED. Price's counsel will forthwith submit a Partial Summary Judgment.

SO ORDERED.

failure to assume its obligations under the policy for which Price prays for $350,000 in punitive damages.