## BOARD OF INS. COM'RS v. DUNCAN.

### No. 5526.

Court of Civil Appeals of Texas. Amarillo.

Sept. 13, 1943.

Rehearing Denied Oct. 11, 1943.

Gerald C. Mann, Atty. Gen., and Wm. J. Fanning, Donald Gay, and Jas. W. Bassett, Asst. Attys. Gen., for appellant.

Ennis Favors, of Pampa, for appellee.

PITTS, Chief Justice.

This suit was filed in due course by Ivy E. Duncan, appellee, against the Board of Insurance Commissioners of Texas, appellant, to set aside an order made by said appellant on June 22, 1942 purporting to cancel appellee's license as a local recording insurance agent and appellant sought in a cross-action a judgment cancelling appellee's license in support of the order entered by the Board of Insurance Commissioners and to enjoin and restrain appellee from further engaging in the insurance business in Texas as a local recording agent until a new license may be granted to him by said appellant.

The case was tried without a jury and the court entered judgment setting aside appellant's order purporting to cancel appellee's license, declaring said license to be in full force and effect and denying any relief on the cross-action of appellant, which perfected its appeal to this court.

There is no controversy about the facts in the case but the paramount question in the case is that of a correct construction of the meaning of the word "control" as the same is used in section 5 of article 5062b, Vernon's Annotated Civil Statutes, and as the same applied to appellee's business, which section reads as follows, to-wit: "No license shall be granted to any person, firm or partnership, either as a Local Recording Agent or Solicitor, for the purpose of writing any form of insurance, unless it is found by the Board of Insurance Commissioners that such person or firm is, or intends to be, actively engaged in the soliciting or writing of insurance from the public generally; that each person or individual of a firm is a resident of Texas, of good character and good reputation, worthy of a license, and is to be actively engaged in good faith in the business of insurance, and that application is not being made in order to evade the laws against rebating and discrimination either for the applicant or for some other person. Nothing herein contained shall prohibit his insuring his own property or properties in which he has an interest; but it is the intent of this section to prohibit coercion of insurance and to preserve to each citizen the right to choose his own Agent or Insurance Carrier, and to prohibit the licensing of an individual or firm to engage in the insurance business principally to handle business which he controls only through ownership, mortgage or sale, family relationship or employment, which shall be taken to mean that an applicant who is making an original application for license shall show the Board of Insurance Commissioners that he has a bona fide intention to engage in business in which at least twenty-five (25%) per cent of the total volume of premiums shall be derived from persons other than himself and from property other than that on which the applicant shall control the placing of insurance through ownership, mortgage, sale, family relationship or employment; and which shall be taken to mean, in the case of application for renewal of license, that at least twenty-five (25%) per cent of applicant's total volume of premiums, during the year preceding such application for renewal, shall have been derived from persons other than himself and from property other than that on which the applicant controlled the placing

328

of insurance through ownership, mortgage, sale, family relationship or employment."

The record discloses that appellee has been an attorney at law in Pampa, Texas, since 1917 and has continuously operated a fire insurance agency in Pampa since 1917; that ·he had continuously had a written contract with the Hanover Fire Insurance Company of New York as their agent for ten years prior to the cancellation of his license by appellant and had written insurance for said company for many years prior thereto; that appellee's commissions had averaged $500 annually for said ten year period; that he had never done a big volume of insurance business but from March 1, 1941 to February 28, 1942 he had written 47 insurance policies; that he had not served in any capacity as an insurance agent since the cancellation of his license by appellant; that J. N. Duncan and his wife were the parents of appellee; that they had lived in Pampa for many years during which time they had acquired and owned considerable business property in Pampa, most of which had been acquired since appellee had become an insurance agent; that J. N. Duncan died November 6, 1941 and his wife, mother of appellee, died previously thereto, on June 4, 1941; that appellee, his brother, Wade Duncan, and his sister, Mrs. J. E. (Augusta) Murfee, were joint executors of the wills of both J. N. Duncan and his wife; that for many years appellee had written the insurance on the property owned by his said parents and did so at his father's request; that he continued to write the insurance on said property at the request of his brothers and sister after the death of his parents; that appellee owned considerable business property himself in Pampa and wrote the insurance on his own property; that his brothers and sister owned separate properties upon a part of which they voluntarily asked appellant to write insurance for them, which he usually did, but that they have more property insured with other agents than with appellee and in one instance appellee successfully urged his brother to get an agent in Mobeetie to insure some of his property rather than have it insured through appellee; that at the time appellant entered its order to cancel the license of appellee and just prior thereto appellee wrote more than 75% of his total volume of business on property owned by

himself and on property owned by his brothers and sisters and the remainder on property owned by others not related to him, but that he wrote less than 50% of his total volume on his own property; that appellee had kept his office open for many years in the business section of Pampa and his business was well known and he testified in part as follows: "I have handled my insurance business just about like I handle my law office; I do not get out and button-hole people for insurance; I figure if they want me to write it they will come to me, and I will write anyone that I think is a good risk and able to pay the premium, and I have conducted this agency along those lines these many years and I have never done a great big volume of business."

Appellant concedes that "it must be admitted that plaintiff's brothers and sisters gave him their business voluntarily and there is no evidence that he threatened them or used any undue influence". Appellant further states that "He did not use threats. He did not use undue influence. He controlled that business by virtue of his family relation to the insureds and that is true because human nature is what it is."

Appellant contends that the per cent of insurance written on the property owned by appellee's brothers and sisters should and would be construed as controlled business as provided in section 5, article 5062b, Vernon's Annotated Civil Statutes, and that appellee had violated the terms of said statute when he wrote more than 75% of his total volume of business on property owned by himself and on property owned by his brothers and sisters, although his volume on his own property was less than 50%.

We find the term "family relationship" used three times in the statute in question and each time such a term is used it is preceded by the word "controls" or "control" or "controlled" and we likewise find that the statute in question provides that "it is the intent of this section * * * to preserve to each citizen the right to choose his own Agent or Insurance Carrier."

39 Tex. Jur. 196, par. 104, says: "It is proper and sometimes necessary to consult a dictionary to ascertain the meaning to be attached to a word."

The same text and volume, page 197, par. 105, says: "One of the primary and settled

rules of construction is that words in common use, when contained in a statute, will be read according to their natural, ordinary and proper meaning unless a contrary intention is clearly apparent from the context or unless there is some necessity, in a particular case, for adopting a different construction." These statements from the text are supported by numerous authorities.

Webster's New International Dictionary defines the word "control" as follows: "To exercise restraint or deciding influence over; to dominate; regulate; to hold from action; to curb; subject or overpower."

Words and Phrases, Perm. Ed., vol. 9, page 434, says: "To 'control' means to exercise restraint or deciding influence over; to dominate; regulate; to hold from action; to curb; subject or overpower."

So far as we are able to find the word "control" has no legal or technical meaning distinct from that given in his usual usage.

It is our opinion that the trial court properly held in this case in his conclusions of law that as a matter of law section 5 of article 5062b of the Vernon's Annotated Revised Civil Statutes of Texas does not prohibit a local recording agent from writing insurance for his relatives in excess of the 75% limit of his volume of business unless such local recording agent exercises some power of control over the placing of their insurance business; that the insurance business appellee wrote for his brothers and sisters in this case was not "controlled business" within the meaning and language of the statute because the appellee did not exercise any element or power of control over such business but such business came to him voluntarily on the part of his brothers and sisters; and that the plaintiff did not write more than 75% of his total volume of "controlled business" within the meaning and the intent of the statute.

Appellant raises some question about whether or not appellee intended to be actively engaged in the soliciting or writing of insurance from the public generally as required by law but, in view of this record, we believe there is no question but that appellee did have a bona fide intention to so engage and was so engaged.

In view of our disposition of the first assignment made by appellant, other questions raised are not now material.

It is our opinion that the trial court rendered a proper judgment in this case and the said judgment is therefore affirmed.