NO. 07-98-0387-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JUNE 20, 2000

_____

DEAN E. LIVELY AND FOUR "J"
INTERNATIONAL CORPORATION, APPELLANTS

V.

ROBERT E. GARRETT AND RANDALL C. JEFFERS, APPELLEES

_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 42,733-B; HONORABLE SAMUEL C. KISER, JUDGE

_____

Before QUINN and REAVIS and JOHNSON, JJ.

Appellants Dean E. Lively and Four "J" International Corporation appeal from a judgment entered against them for exemplary damages, attorney's fees, and declaratory relief. We reverse and render.

FACTUAL AND PROCEDURAL BACKGROUND

In the early 1990's appellees Robert E. Garrett and Randall C. Jeffers became partners in a general partnership called Finis Terra. Finis Terra and appellant Dean E. Lively became associated in land development activities in the Amarillo, Texas, area. Lively's involvement in the development activities was both individually and through several business entities with which he was associated or in which he was an officer or participant. The land development ventures did not prove to be successful to all the participants' expectations, and some of the Finis Terra partners, not including appellees, became plaintiffs in a lawsuit against Lively, his various associated entities, and others. The litigation was filed in the 181st District Court of Randall County ("the Pre-Developer Litigation"). The litigants attempted to negotiate a settlement agreement. Because Finis Terra's participation in the land development and the lawsuit was as a general partnership, Lively needed appellees to be parties to the Release and Settlement Agreement ("the Pre-Developer Release", or "the Release") which was to settle the lawsuit and allow Lively, his associated business entities and his associates to proceed with development of the land which was involved in the venture. Appellees, however, would not agree to sign the release which was being negotiated.

Before they became involved in Finis Terra and its investment activities with Lively, appellees had suffered financial difficulties in their real estate businesses. The end result of those prior difficulties was entry of an agreed judgment against appellees in the 108th District Court of Potter County, Texas, in favor of Amwest Savings Association. The judgment was dated October 31, 1991, and was in the amount of $303,956.82, which included principal, pre-judgment interest, and attorney's fees ("the 1991 judgment").

During the same timeframe that the Pre-Developer Release was being negotiated, Lively was negotiating with First American Bank, SSB ("First American"), successor to AmWest Savings, to restructure debt on which Lively was a guarantor. Either through his negotiations with First American or through conversations with appellees, Lively learned of AmWest's 1991 Judgment against appellees. Because appellees were hesitating to sign the Release, which Lively needed them to sign so the Pre-Developer project could continue, Lively threatened appellees that he would purchase the 1991 Judgment from First American to gain leverage against them in settlement negotiations. As part of his negotiations with First American, Lively reached an agreement with Carla Addy, a Vice President of First American, for Lively to purchase the 1991 Judgment for $15,000. The sale of the Judgment by First American to Lively had to be approved by the Federal Deposit Insurance Corporation. FDIC's approval was obtained in early November, 1994, but Lively had not yet reached a complete agreement with First American on restructuring of the debt on which he was guarantor, so the sale of the 1991 Judgment was not consummated at that time.

During November, 1994, the Pre-Developer Litigation settlement negotiations were progressing. By the time a settlement was reached and language for the Pre-Developer Release was finalized in late November, appellees Garrett and Jeffers had agreed to execute the Release. Because of the threats which Lively had made about purchasing the 1991 Judgment, appellees insisted on a clause being inserted in the Release to protect them from Lively's threatened actions. Thus, shortly before the Release was executed, clause 4.4.c. became part of the Pre-Developer Release. Clause 4.4.c. provided that:

Notwithstanding anything to the contrary in this Agreement, the Lively parties, Flagship, ITC, Anthony M. Saikowski, and any other person, firm, corporation, partnership or association owned in part of [sic] controlled in part by Dean E. Lively agree that they will not acquire or seek to acquire any judgment, note, lien, demand, claim, or cause of action currently held or owned by any creditor of Finis Terra Partners, and any such acquired judgment, note, lien, demand, debt, claim, or cause of action which may be acquired is released hereby.

By definitions in the Release, appellees were each "Finis Terra Partners" and appellant Lively was a "Lively party." The written Release was executed effective November 30, 1994.

Because of the addition of clause 4.4.c. to the Pre-Developer Release, Lively decided that he could not complete the purchase of the 1991 Judgment from First American, despite his earlier agreement to do so. Ms. Addy, who was negotiating with Lively on other debts, was very disappointed when Lively told her in early December, 1994, that he could not complete the agreed-upon purchase of the 1991 Judgment. Being concerned that his failing to purchase the 1991 Judgment would affect Ms. Addy's negotiating posture on his other obligations, Lively told her that he would try to find another purchaser for the 1991 Judgment. He approached various persons who declined to purchase the 1991 Judgment. Lively approached a neighbor of his, Joseph Mangione. Mangione was in the real estate business, as well as being an investor in different enterprises. Mangione and Lively had previously become social and business friends and had done favors for each other, although they had not been financially associated in a business venture. Mangione took an interest in purchasing the judgment as a business investment. The trial testimony is conflicting on how much, if any, contact Mangione had

with Carla Addy regarding the 1991 Judgment, but on May 31, 1995, First American sold the 1991 judgment to appellant Four "J" International ("Four J") for $15,000. Mangione and his wife own all of the stock of Four J, and they are the corporate officers. Lively and Mangione both testified that Lively had no previous knowledge of or dealings with Four J.

In the summer of 1995, Four J began proceedings to collect amounts due under the judgment. Appellees responded to the collection efforts of Four J with a lawsuit in Randall County against Lively and Four J. Garrett and Jeffers sought declaratory judgment that Lively breached clause 4.4.c. of the Pre-Developer Release by controlling Four J in its purchase of the 1991 Judgment; therefore, the 1991 Judgment was satisfied, released and fully discharged, and appellees had no further liability for amounts due under the judgment. They also sought damages and attorney's fees from appellants on the bases that (1) Lively breached the Release; (2) Lively committed fraud by executing the Release with clause 4.4.c. in it when he did not intend to comply with clause 4.4.c.; (3) Four J tortiously interfered with Lively's obligations under clause 4.4.c., the Pre-Developer Release and the relationship between appellees and Lively which the Release created; and (4) Lively and Four J conspired to cause Lively's breach of clause 4.4.c. Appellees claimed that appellants acted oppressively and with actual malice in their actions and were therefore liable for exemplary damages. Both Lively and Four J filed challenges to venue in Randall County. The venue challenges were overruled.

Following a bench trial, judgment was entered in favor of appellees. The 1991 Judgment against appellees was declared to be satisfied, released and discharged, and attorney's fees and exemplary damages were awarded to appellees. No actual damages

were awarded. Appellants requested and the trial court entered findings of fact and conclusions of law.

By eight issues Lively challenges the trial court's (1) venue determination, (2) Findings of Fact and Conclusions of Law, and (3) judgment in favor of appellees. Four J does not challenge the trial court's venue ruling, but appeals the (1) Findings of Fact and Conclusions of Law, and (2) judgment.

Appellees respond that the Pre-Developer Release and the judgment based on the Release were formulated in and arose out of prior Randall County litigation. Thus, they claim that a substantial part of the events or omissions[1] giving rise to their claim occurred in Randall County, and the challenges to venue were properly overruled by the trial court. They then assert that the trial court correctly construed clause 4.4.c. to be unambiguous and that the trial court's findings and judgment are based on legally and factually sufficient evidence. Because our conclusion that the evidence is legally insufficient to support the trial court's finding that Lively breached the terms of clause 4.4.c. of the Pre-Developer Release is dispositive of the appeals of both Lively and Four J, we first address Lively's issue two and Four J's issues one and two.

LAW

When multiple grounds for reversal are presented on appeal, the appellate court should first address those issues which would afford the greatest relief to an appellant.

_____

[1]See TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1) (Vernon Supp. 2000).

Bradleys' Elec., Inc. v. CIGNA Lloyds Ins. Co., 995 S.W.2d 675, 677 (Tex. 1999). If a challenge to venue is presented on appeal as well as an issue which warrants reversal of the trial court judgment, we are to first address the issue which warrants reversal, and render the judgment which the trial court should have rendered. Id.

Findings of fact entered in a case tried to the bench have the same force and dignity as a jury's verdict upon questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.1991). A trial court's findings of fact are reviewable for legal and factual sufficiency by the same standards applied in reviewing the sufficiency of the evidence supporting a jury's finding. Id. A factual finding must be supported by more than surmise or suspicion. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993). When reviewing a legal sufficiency point, we consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). Evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding. Id. In considering a factual sufficiency issue, we review all the evidence and reverse only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986); In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1962). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962), and may believe one witness and disbelieve another and resolve inconsistencies in testimony. McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986).

One person or entity "controls" another person or entity by exercising restraint or deciding influence over the other, or by dominating, regulating, or overpowering the other. See Board of Ins. Comm'rs v. Duncan, 174 S.W.2d 326, 329 (Tex.Civ.App.--Amarillo 1943, writ ref'd). "Control" of one by another may be by either an agreement governing the right of control, or by an actual exercising of control. See Coastal Marine Serv. of Texas, Inc. v. Lawrence, 988 S.W.2d 223, 226 (Tex. 1999). Evidence of the possibility of control is not evidence that the right of control exists or that actual control is exercised. Id.

ANALYSIS

Appellants and appellees developed and tried the case in the trial court on the question of whether Four J was "controlled" in part by Lively within the meaning of clause 4.4.c., and the theory that if it was, then Lively breached the terms of clause 4.4.c. of the Pre-Developer Release. As noted above, the other claims asserted by appellees against appellants (fraud by Lively, tortious interference with contract by Four J, and civil conspiracy) are necessarily based on a finding that Lively breached clause 4.4.c. Therefore, we first consider the evidentiary challenges of appellants to the trial court's finding that Four J was "controlled" in part by Lively in relationship to Four J's acquisition of the 1991 Judgment, within the meaning of clause 4.4.c.

The trial court concluded as a matter of law that clause 4.4.c. of the Pre-Developer Release is not ambiguous. Neither appellants nor appellees urge on appeal that clause 4.4.c. is ambiguous, but, rather, assert that it is not ambiguous. We treat the clause as unambiguous.

Appellees do not contend that Lively owned any part of Four J; nor do they contend that in general business matters Lively controlled Four J in whole or in part. They maintain, however, that the record contains proof that Lively controlled Four J's involvement in the purchase of the 1991 Judgment "from beginning to end." The evidence appellees cite to support such conclusion is included in our factual recitation above. Additionally, appellees point to testimony of Joseph Mangione that he and Four J would not have heard of or been involved in purchasing the 1991 Judgment had it not been for Lively. Lively provided information about Four J to Carla Addy so assignment of the Judgment could be made to Four J, and Lively acted as courier between Four J and First American as to physical transfer of the assignment of the judgment. None of these actions qualify as evidence that Lively dominated or exercised a determining influence, in whole or in part, over Four J's (1) decision to inquire about the Judgment, (2) decision to make an offer to purchase the Judgment, or (3) decision to consummate purchase of the Judgment in May, 1995.

The record does not contain direct evidence that Lively exercised or had the right to exercise, in whole or in part, a deciding, dominating, regulating, or determining influence over Four J in its purchase of the 1991 Judgment. Lively denied any control over, and even knowledge of the existence of, Four J until shortly before the judgment was assigned by First American in May, 1995. Mangione, as president of Four J, denied that Lively exerted any control over Four J's decision whether to purchase the Judgment. Mangione testified that Lively advised him Lively could not purchase the Judgment because of an agreement Lively had made, but that Lively thought the Judgment would be a good business venture. Mangione asserted that the decision to purchase the Judgment was

his alone; that Lively had no interest in Four J, no control over Four J, no interest in any proceeds from the Judgment; and that the decision to purchase the Judgment was based on Mangione's examination of a credit report on appellees and the fact that Four J would be purchasing the judgment for "five cents on the dollar." No witnesses other than Lively and Mangione purported to have knowledge of what type of relationship existed between Lively and Four J. After Four J began collection efforts on the Judgment, appellee Jeffers approached Lively. Lively stated that he would see what he could do about the matter, but did not say that he had any control over or right to control Four J to any extent. Jeffers' testimony made no reference to Lively's relationship to Four J during the time Four J was considering purchasing the 1991 Judgment, or when Four J purchased the Judgment.

The record demonstrates that Lively was aware that he could not purchase the 1991 Judgment after he executed the Pre-Developer Release, and that he was highly motivated to have the Judgment purchased from First American so that his on-going negotiations with First American would not be compromised. A pre-existing social and business relationship between Lively and Mangione is not controverted. Carla Addy looked to Lively to find a purchaser for the 1991 Judgment in accordance with the sale price approved by the FDIC, and she considered the sale of the Judgment a "Lively deal." Lively approached various potential purchasers of the Judgment and was not successful in finding a purchaser until Mangione expressed interest. Lively facilitated Four J's purchase of the 1991 Judgment, much as a broker or attorney might facilitate a transaction for a friend or client by making suggestions, disclosing information and assisting with contracts or assignments. But, assisting an entity in a transaction does not equate to "control" of the entity which is

-10-

entering into the transaction. The trial evidence does not create a stronger inference that Lively exercised or had the right to exercise any deciding influence over, any domination of, subjection or overpowering of Four J to any extent in its decision to purchase the Judgment, than the evidence creates an inference that Four J made an independent business decision to purchase the Judgment because of the possibility of multiplying its investment through collection of all or part of the Judgment.

The trial court, as fact finder and judge of witness credibility, could have disbelieved or discounted the testimony of Lively and Mangione that Lively had no control over Four J. But, disbelieving such testimony would not create affirmative evidence that Lively controlled Four J, which was the burden of proof borne by appellees. Circumstantial evidence may be used to establish material facts. However, where the circumstantial evidence only creates suspicion or surmise, we must sustain a challenge to its legal sufficiency. Browning-Ferris, Inc., 865 S.W.2d at 928.

We sustain the challenges of Lively's second issue and Four J's first and second issues to the legal sufficiency of the evidence to support the finding that Lively breached clause 4.4.c. of the Pre-Developer Release. Because our disposition of Lively's second issue and Four J's first and second issues is determinative of their appeal, we do not address the remainder of their issues, including Lively's challenge to the trial court's venue ruling. TEX. R. APP. P. 47.1; Bradleys' Elec., Inc., 995 S.W.2d at 676-77.

The judgment of the trial court is reversed and judgment is rendered that appellees take nothing.

-11-

Phil Johnson
Justice


Do not publish.