**GLENS FALLS INSURANCE COMPANY, Appellant,**

**v.**

**EMPLOYERS CASUALTY COMPANY et al., Appellees.**

**No. 481.**

Court of Civil Appeals of Texas, Houston (14th Dist.)

July 14, 1971.

Rehearing Denied Aug. 4, 1971.

B. Jeff Crane, Jr., Vinson, Elkins, Searls & Smith, Houston, for appellant.

Harman Parrott, Sewell, Junell & Riggs, Houston, Thomas G. Gee, Graves, Dougherty, Gee, Hearon, Moody & Garwood, Austin, for appellees.

TUNKS, Chief Justice.

This case involves a controversy between two insurance companies as to the ultimate liability for the payment of a personal injury judgment.

In April of 1965, the American General Insurance Company building was under construction in Houston. W. S. Bellows Construction Company was the general contractor. Tobin & Rooney Plastering Company, hereinafter called Tobin & Rooney, was a subcontractor in the construction of that building. Tobin & Rooney was an insured under a comprehensive general liability policy issued by Employers Casualty Company, hereinafter called Employers Casualty. Shelton W. Greer Co., Inc., hereinafter called Greer, was a supplier of material used on the job by Tobin & Rooney. Greer was the named insured under a comprehensive automobile liability policy issued by Glens Falls Insurance Company, hereinafter called Glens Falls, and covering the truck used by Greer in making its delivery. On April 15, 1964, the Greer truck delivered to Tobin & Rooney some plastering material to be used in the construction.

The load consisted of about 400 sacks of fifty pounds each. In making the delivery Greer's truck backed up to an elevator to be used in hoisting the sacks of material to the 19th floor of the building. The Greer truckdriver then placed the sacks of material on the tailgate of his truck from where they were picked up by two Tobin & Rooney employees, Albert Giles and Laconieu Manuel, and placed on the elevator. The sacks were then hoisted to the 19th floor of the building where they were removed from the elevator and placed in a stack near the middle of that floor by two other Tobin & Rooney employees. One of the sacks of material fell off the elevator from the 19th floor and struck James Patrick Murphy, an employee of Bellows, who was standing on the ground level.

Both of the two insurance policies in question, the general liability policy of Employers Casualty and the automobile liability policy of Glens Falls, had the usual provision requiring that the insured give written notice of an accident "as soon as practicable."

Tobin & Rooney gave Employers Casualty notice of the accident immediately. An Employers Casualty investigator went to the scene, arriving before the truck had been moved. He was accompanied by a court reporter and a photographer. Question and answer statements from witnesses were taken and the photographer took photographs of the scene and equipment. The record before us does not present a question as to Tobin & Rooney's compliance with the notice of accident provision of their policy.

The second day following the accident the Employers Casualty investigator gave Glens Falls notice, by telephone, of the occurrence of the accident and informed Glens Falls that Tobin & Rooney and its employees would contend that they were covered by the Glens Falls policy issued to Greer. About a week following the accident the Employers Casualty investigator

conferred in person with a Glens Falls claims man giving him information concerning the accident and again stating that Tobin & Rooney and its employees would claim coverage under the Glens Falls policy. On this occasion the results of the Employers Casualty investigation were made available to Glens Falls.

On April 23, 1964, Greer wrote Glens Falls a letter giving notice of the accident. That letter included the following paragraph:

"Our delivery truck was not involved, though we were delivering material to the jobsite. Our truck was loaded with 400 bags of Mono-Kote, each bag weighing approximately 50#. Our truckdriver, Aaron Garrett, had unloaded approximately 264 bags of material. When we say unloading, this means taking the material to the tail-gate of our truck where our customer, Tobin and Rooney, has their laborers take charge of material and place it on the hoist."

It is conceded that this letter complied with the written notice of accident provisions of the Glens Falls policy insofar as the named insured, Greer, is concerned.

On July 14, 1964, Employers Casualty wrote Glens Falls a letter reciting that the Murphy accident occurred during the course of unloading the Greer truck and putting Glens Falls on notice that Tobin & Rooney claimed coverage as an insured under the Glens Falls policy issued to Greer and covering the Greer truck. On October 2, 1964, Murphy filed suit for personal injuries against Tobin & Rooney. Murphy did not file suit against Greer or Greer's truckdriver, nor did he sue any of the Tobin & Rooney employees. In his original petition Murphy did not allege that his injuries were caused by negligence which occurred in the unloading of the Greer truck. On October 21, 1964, Employers Casualty's attorney, a member of a large Houston law firm with a heavy insurance case docket,

wrote Employers Casualty a letter expressing the view that Tobin & Rooney was an insured under the unloading provision of the Glens Falls policy issued to Greer. On October 22nd, a copy of that written opinion was forwarded by Employers Casualty to Glens Falls. The Employers Casualty attorney, however, filed an answer to Murphy's suit against Tobin & Rooney.

After having received a copy of the opinion given by Employers Casualty's attorney as to the coverage of Tobin & Rooney under the Glens Falls policy issued to Greer, Glens Falls decided to seek another legal opinion. With full knowledge and consent of all parties, Glens Falls requested such legal opinion from another member of the law firm of which the Employers Casualty attorney was a member. On November 10, 1964, that attorney wrote Glens Falls a letter expressing the opinion that, under the unloading provision, Tobin & Rooney was an insured under the Glens Falls policy issued to Greer. Thereupon Glens Falls decided to assume the responsibility for the defense of Tobin & Rooney in the Murphy case. On January 18, 1965, Glens Falls did so assume the defense of such claim. That status, Glens Falls' defense of Tobin & Rooney from the Murphy claim, continued for about a year when Glens Falls decided to withdraw from such defense. Glens Falls was billed for and paid for the services rendered it in the making of such defense during such year. Those services included the filing of an amended answer, taking of depositions of witnesses, negotiating toward a settlement, attendance of docket calls and the other usual attorney's services in connection with the defense of a personal injury claim. Upon Glens Falls' withdrawal from the defense, the law firm which had theretofore represented both Glens Falls and Employers Casualty, withdrew from participation in the litigation. Another law firm, as attorneys for Employers Casualty, took over the defense of Tobin & Rooney.

After the new Employers Casualty attorneys took over the defense of Tobin & Rooney, a plan was conceived, the purpose of which was to impose ultimate liability for the Murphy claim upon Glens Falls. Under its general liability policy Employers Casualty had a duty to Tobin & Rooney to defend and to pay Murphy's claim against Tobin & Rooney. Such coverage, however, did not extend to the employees of Tobin & Rooney. Employers Casualty had no duty to defend a claim growing out of the accident asserted against Tobin & Rooney's employees, nor did it have any duty to such employees to pay any such claim that was established. If it could be established that Tobin & Rooney were entitled to indemnity from its employees, Giles and Manuel, and if it could be further established that Giles and Manuel were insureds under the unloading provision of the automobile liability policy issued by Glens Falls to Greer, then Glens Falls could be required to pay to Tobin & Rooney a judgment in its favor against Giles and Manuel for indemnity. Tobin & Rooney filed a third party action in the Murphy case by which third party action Tobin & Rooney sought indemnity from Giles and Manuel. Glens Falls was given notice of this action and refused to defend it. A settlement as between Tobin & Rooney and Murphy was negotiated under the terms of which it was stipulated that Murphy sustained $64,500 damages from his injuries. It was agreed to submit the facts as to liability to a trial court without a jury. Those facts clearly established liability on the part of Tobin & Rooney. The trial court in such non-jury hearing found liability on the part of Tobin & Rooney and rendered judgment for Murphy against that defendant. The trial court, however, refused to render judgment for Tobin & Rooney for indemnity as against Giles and Manuel. Rather, it rendered judgment that Tobin & Rooney recover from Giles and Manuel as by contribution, for one-half the sum that it, Tobin & Rooney, had been required to pay to Murphy. Tobin & Rooney prosecuted an appeal from that portion of the judgment in the Murphy case which denied it full indemnity from Giles and Manuel. On appeal the Court of Civil Appeals reformed the trial court's judgment in such a manner as to permit Tobin & Rooney to recovery judgment against Giles and Manuel for full indemnity. See Tobin & Rooney Plastering Company v. Giles, Tex. Civ.App., 418 S.W.2d 598, no writ hist.

Tobin & Rooney paid in full Murphy's judgment against it. The money used for making such payment was advanced to Tobin & Rooney by Employers Casualty Company under a written agreement designated as a "loan receipt." Such agreement recites Employers Casualty's advance of the money to Tobin & Rooney for the purpose of payment of the Murphy judgment and recites that the money is advanced as a loan to be repaid out of any recovery by Tobin & Rooney from any other party liable to Tobin & Rooney under the facts of the Murphy accident claim. By such instrument Tobin & Rooney also assigned to Employers Casualty a claim it had for repayment to it of the amount paid to Murphy. Also the Employers Casualty policy included a subrogation agreement whereby Employers Casualty became subrogated to any claim that Tobin & Rooney, its insured, had against other parties growing out of a covered accident. Employers Casualty then filed this suit against Glens Falls by which Employers Casualty asserts its rights, as assignee and subrogee of Tobin & Rooney, to recover the amount paid in defense of and satisfaction of the Murphy claim upon the theory that Glens Falls, as insurer of Giles and Manuel, is obliged to satisfy Tobin & Rooney's judgment against Giles and Manuel for indemnity. Giles and Manuel intervened asserting their right to have Glens Falls pay the judgment against them and in favor of Tobin & Rooney.

The case was tried to a jury. In response to special issues the jury found that on the occasion in question Giles and Manuel were unloading the Greer truck with the im-

plied permission of Greer. The jury also found that written notice of the accident was given to Glens Falls by or for Tobin & Rooney as soon as practicable and that Glens Falls had waived its right to require written notice of accident by or for Tobin & Rooney. The jury failed to find that either Giles or Manuel had given written notice of the accident as soon as practicable. The jury did find, however, that Glens Falls had waived its right to written notice of accident by or for Giles and Manuel. The jury found that the $64,500 paid to Murphy by Tobin & Rooney was reasonable in amount. It was stipulated that the reasonable and necessary expense incurred by Employers Casualty in defending the Murphy claim was $3,500. The trial court rendered judgment that Glens Falls was liable to Tobin & Rooney and its employees Giles and Manuel for $68,000 as the cost of defending and discharging the Murphy claim against Tobin & Rooney.

■ The appellant's first general line of attack on the trial court's judgment is its contention that Giles and Manuel did not become insureds under its policy issued to Greer because the loading and unloading provision was not applicable to the facts of this case.

The policy in question included the following language:

"III. Definition of Insured.

"The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.

"IV. Purposes of Use Defined.

" * * * (c) Use of an automobile includes the loading and unloading thereof."

The procedure followed in unloading the Greer truck has been discussed to some extent above. While Giles and Manuel picked the sacks up from the tailgate of the Greer truck they placed them on an elevator which would hold about 20 sacks. When the elevator was loaded, it was raised to the 19th floor where two other Tobin & Rooney employees picked them up and moved them to a place near the center of the building where they were stacked for use by the plasterers. This procedure was in keeping with a practice which had been established in earlier deliveries from Greer to Tobin & Rooney. About one-half of the truck load had been so removed when a sack fell from the elevator while it was at the 19th floor and struck Murphy. About four of the sacks constituting the elevator load had been removed from the elevator when the sack fell. There was no evidence that anything done by the Tobin & Rooney laborers who were unloading the elevator at the 19th floor caused the sack to fall. In fact, those laborers working on the 19th floor had been named as third party defendants in Tobin & Rooney's third party action filed in the Murphy case and they were exonerated from any negligence by the court's judgment therein. It is uncontroverted that the sack which fell was placed on the elevator from the Greer truck by Giles and Manuel. Under those facts there was evidence to support the jury's findings that Giles and Manuel were unloading the Greer truck with Greer's implied permission. Royal Indemnity Company v. H. E. Abbott & Sons, Inc., (Tex.), 399 S.W.2d 343.

Obviously, after Giles and Manuel had placed the 20 sacks on the elevator they had to wait for it to be hoisted to the 19th floor, be unloaded, and return to ground level before they could continue the process of taking sacks from the Greer truck to be placed on the elevator. They did not continue taking sacks from the truck while the elevator was at the upper floors of the building. The appellant argues that its policy did not render it liable for the injuries to Murphy as the insurer of Giles

and Manuel because Giles and Manuel were not removing sacks from the truck at the time the accident occurred. It contends that even if Giles and Manuel's removal of the sack from the truck be considered a "use" of the truck under the loading and unloading provision, nevertheless that use had terminated at the time the accident occurred. That argument is rejected.

In the first place the accident did occur during the unloading process. Texas follows the "completed operation" rule in determining what constitutes a use of a vehicle under the loading and unloading provisions of an insurance policy. The hoisting of the sacks to the 19th floor of the building was a part of the unloading of the truck. The unloading process continued until the sacks were positioned on the 19th floor for use by the Tobin & Rooney employees. Commercial Standard Ins. Co. v. American Gen. Ins. Co., (Tex.), 455 S.W.2d 714; Travelers Insurance Co. v. Employers Casualty Co., (Tex.), 380 S.W.2d 610.

In the second place, Glens Falls' liability was for accidents that "arose out of the use (unloading) of the vehicle * * *" and is not limited to those accidents which occurred during the unloading process. Travelers Insurance Co. v. Employers Casualty Co., supra, at p. 614. The significant question was whether the negligence which caused the accident and injuries to Murphy occurred during the course of unloading the truck. In this case the only thing that Giles and Manuel had to do with the sack which injured Murphy was in removing it from the truck and placing it on the elevator for delivery to the 19th floor of the building. That was a part of the use (the unloading) of the truck whether the lifting of the sack to the 19th floor was a part of such unloading or not.

The trial court properly held that the negligence of Giles and Manuel which was a cause of Murphy's injuries occurred during the unloading of the truck so that Tobin & Rooney, as well as Giles and Manuel, were omnibus insured under the policy issued by Glens Falls.

██ Another area of complaint by appellant is as to the evidentiary support for the jury's findings to the effect that written notice of the accident was given by or on behalf of Tobin & Rooney as soon as practicable and that Glens Falls had waived such written notice of accident by or on behalf of Tobin & Rooney. Appellant's points of error in those respects are overruled.

In Travelers Insurance Co. v. Chicago Bridge & Iron Co., Tex.Civ.App., 442 S.W.2d 888, writ ref., n. r. e., at p. 903, the Court said:

"* * * Where an insurance company receives a proper and timely notice from the named insured, including 'particulars sufficient to identify' the additional insured, it is not necessary that another notice be given by the omnibus, or additional, insureds."

The letter dated April 23, 1964 from Greer, the named insured, to Glens Falls, was admittedly proper and timely notice of accident on behalf of Greer. It put Glens Falls on notice that the accident happened during the process of unloading the Greer truck and identified Tobin & Rooney as having done the unloading. The recitations in that respect were "particulars sufficient to identify" Tobin & Rooney as an omnibus, or additional insured. The evidence concerning this written notice together with evidence to the effect that Glens Falls had already received oral notice concerning the accident and had begun its investigation thereof, constituted sufficient evidence to support the jury's findings that written notice of accident by or for Tobin & Rooney was given Glens Falls as soon as practicable.

The July 13, 1964 letter from Employers Casualty to Glens Falls also constituted a

written notice of the accident. It included a statement to the effect that the accident occurred during the course of the unloading and put Glens Falls on notice that Tobin & Rooney would claim coverage under the Glens Falls policy issued to Greer. This notice was received by Glens Falls some 90 days after the accident. In the meantime, however, Glens Falls had conducted an investigation of the accident and had been given full access to the result of an extensive investigation made by Employers Casualty. There is no showing that Glens Falls was in any manner prejudiced by the delay of 90 days in the giving of this written notice. Under the circumstances the evidence concerning it, too, created a fact question as to whether or not written notice of the accident was given by or for Tobin & Rooney as soon as practicable. Atteberry v. Allstate Insurance Company, Tex.Civ.App., 461 S.W.2d 219, writ ref., n. r. e.

■ There was also evidence sufficient to sustain the jury's finding to the effect that Glens Falls waived its rights to require written notice of the accident by or for Tobin & Rooney. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. Massachusetts Bonding and Ins. Co. v. Orkin Exterm. Co., 416 S.W.2d 396 (Tex.). There is evidence in this record supporting the jury's finding that Glens Falls waived its right to assert, as against Tobin & Rooney, the policy defense of failure to give notice of accident. After it had received written notice from Greer that the accident occurred while Tobin & Rooney was unloading the truck and after it had received the written notice from Employers Casualty to the same effect together with a statement that Tobin & Rooney claimed coverage under its policy to Greer, and without having taken any non-waiver agreement from Tobin & Rooney, Glens Falls conducted extensive investigation of the facts of the accident. Also after those written notices and again without having taken any non-waiver agreement, Glens

Falls assumed the defense of Murphy's suit against Tobin & Rooney, and continued the maintenance of such defense for almost a year. During the period of time that Glens Falls was defending the Murphy suit, its attorneys took depositions and explored the possibilities of the settlement of the claim. Such conduct clearly evidenced an intentional relinquishment of Glens Falls right to assert, as against Tobin & Rooney, a defense based upon such insured's failure to given written notice of accident and such conduct was intentional conduct, inconsistent with the assertion of such defense. Highway Insurance Underwriters v. Griffith, Tex.Civ.App., 290 S.W.2d 950, n. r. e.

■ Under the record before us we are not required to determine whether the written notice dated April 23, 1964 from Greer to Glens Falls or the written notice dated July 14, 1964 from Employers Casualty to Glens Falls constituted written notice of accident on behalf of Giles and Manuel. This is true because the jury failed to find that Giles and Manuel did give timely written notice of accident. No motion was made to disregard those findings. The trial court may not disregard a controlling finding made by the jury in the absence of a motion to so disregard it. Cunningham v. R. W. McPherson & Associates, Inc., Tex.Civ.App., 392 S.W.2d 145, writ ref., n. r. e. Furthermore, the appellee, plaintiff in the trial court, made a motion for judgment on the verdict and did not make any alternative motion to disregard the jury's findings. Under those circumstances it is precluded on appeal from taking the position that those findings were not supported by the evidence. 4 McDonald, Texas Civil Practice, p. 1414, Sec. 17.23. Thus, if the trial court's judgment based upon a holding that the liability of Giles and Manuel was covered by the Glens Falls policy is to be sustained it must be by virtue of the jury's findings that Glens Falls waived notice of accident by or for Giles and Manuel.

The April 23rd letter from Greer to Glens Falls identified Tobin & Rooney as participating in the unloading of the Greer truck. It did not so identify Giles and Manuel. The July 14 letter from Employers Casualty to Glens Falls stated: "Please take notice of the fact that Tobin & Rooney claimed coverage under your policy as an insured." No such mention was made of any claim of coverage by Giles and Manuel. Murphy filed no suit against Giles and Manuel. Giles and Manuel were not parties to the Murphy suit at any time during the period that Glens Falls conducted the defense thereof and continued its investigation by deposition and by exploring the possibilities of settlement. While we have held that such conduct on the part of Glens Falls was evidence supporting the jury's finding that Glens Falls waived written notice of accident by Tobin & Rooney, such waiver as to the employer, Tobin & Rooney, did not constitute nor necessarily evidence waiver as to the employees Giles and Manuel. American Fidelity & Cas. Co. v. Traders Gen. Ins. Co., 160 Tex. 554, 334 S.W.2d 772. There was nothing about Glens Falls investigation of, defending and negotiating for settlement of Murphy's suit against Tobin & Rooney that was inconsistent with its denial of coverage for Giles and Manuel. All of Glens Falls conduct was consistent with its assumption of the defense of Tobin & Rooney and, for that very reason, not inconsistent with its denial of responsibility to Giles and Manuel. There is no evidence in the record supporting the jury's findings that Glens Falls waived timely notice of accident on behalf of Giles and Manuel. Appellant's points of error to the effect that there was no such evidence to support such findings are sustained.

■ Alternative to its suit to recover full indemnity from Glens Falls as insurer of Giles and Manuel, Employers Casualty pleaded as follows:

"Pleading in the alternative, Plaintiff would show that Defendant was currently obligated with Plaintiff to defend Cause No. 655,278 and that Defendant was also obligated to pay under its 'other insurance' clause a pro rata portion of the judgment in Cause No. 655,278, which judgment was satisfied by Plaintiff herein, as contractual and legal subrogee and assignee of Tobin & Rooney Plastering Company.

"WHEREFORE, Plaintiff seeks to have Glens Falls Insurance Company declared obligated to reimburse it for a pro rata part of all sums expended in the investigation, defense, appeal and satisfaction of judgment in Cause No. 655,278."

Tobin & Rooney was the named insured of Employers Casualty and was an omnibus insured of Glens Falls. Under such circumstances each company was under obligation to Tobin & Rooney to protect it from Murphy's claim. However, each of the policies in question had an "other insurance" provision in it. Such provision in the Glens Falls policy was in the following language:

"14. Other Insurance: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

The language of the Employers Casualty policy was the same except that it did not have the proviso as to hired and non-owned automobiles. The limit of liability under the Employers Casualty policy was $300,-

**838**

000. The limit of liability under the Glens Falls policy was $200,000. Thus, as to the Murphy accident, Glens Falls was liable to Tobin & Rooney for ⅖ths of the cost of defending and discharging Murphy's claims. When Employers Casualty furnished the money with which Tobin & Rooney paid Murphy's claim it took an assignment of Tobin & Rooney's claim against, among others, any insurance carrier. The policy issued by Employers Casualty to Tobin & Rooney also had a subrogation provision in it. Employers Casualty thus acquired the right to require Glens Falls to pay ⅖ths of the reasonable cost of defending and paying Murphy's claims. Employers Casualty Co. v. Transport Insurance Co., (Tex.), 444 S.W.2d 606; Traders & General Ins. Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S.W.2d 142.

In the trial court Glens Falls made a motion to disregard certain jury findings including those by which the jury found that Glens Falls had waived written notice of accident by or for Giles and Manuel. Pursuant to such motion, such findings should have been disregarded since there was no evidence to support them. When such findings are so disregarded the remaining verdict, the pleadings and the facts established as a matter of law entitle Employers Casualty and intervenors, Giles and Manuel, to a judgment against Glens Falls for ⅖ths of the amount which it paid in defense of and discharge of the Murphy claim against Tobin & Rooney.

The judgment of the trial court is reformed so as to adjudge Glens Falls liable to Employers Casualty, plaintiff and Giles and Manuel, intervenors in the amount of $27,200, representing ⅖ths of the $68,000 paid in defending and paying the Murphy claim, together with interest at the rate of 6% from July 15, 1966, the date such claim was paid, such judgment so rendered to draw interest at 6% from its date, November 9, 1970, until paid. As so reformed, the trial court's judgment is affirmed.