IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 13, 2014 Session

## BANCORPSOUTH BANK v. 51 CONCRETE LLC, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH0910921     Walter L. Evans, Chancellor**

_____

**No. W2013-01753-COA-R3-CV - Filed January 27, 2015**

_____

This is the second appeal of this conversion case. Appellant bank holds a perfected security interest in three pieces of equipment used as collateral for a loan made to its debtor, John Chorley. Appellees acquired this equipment from Mr. Chorley before he defaulted on his loan with Appellant bank. Appellees did not perform a UCC check, instead relying on Mr. Chorley's representation that there were no liens on the equipment. Appellees subsequently sold the equipment to parties not involved in this case. After Mr. Chorley defaulted on his loan, Appellant bank sued Appellees for conversion, seeking compensatory damages, attorney's fees, and punitive damages. The trial court awarded judgments against both Appellees, but denied attorney's fees and punitive damages. All parties assert error on appeal. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial court is
Reversed in Part and Affirmed in Part**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Jeffrey D. Germany and Marshall Digmon, Memphis, Tennessee, for the appellant, BancorpSouth Bank.

W. Clark Washington, Memphis, Tennessee, for the appellee, 51 Concrete, LLC.

Scott A. Frick, Memphis, Tennessee, for the appellee, Thompson Machinery Commerce Corporation.

1

# MEMORANDUM OPINION[1]

## I.  Background

For purposes of consistency, we recite the factual background and procedural history from our prior opinion in ***BancorpSouth Bank v. 51 Concrete, LLC***, No. W2011-00505-COA-R3CV, 2012 WL 1269180 (Tenn. Ct. App. Apr. 16, 2012) (***"BancorpSouth I")***:

> In June 2006, John Chorley ("Chorley") executed a promissory note and security agreement in favor of […] BancorpSouth Bank [("BancorpSouth" or "Appellant")] in exchange for a loan of $75,585.95. The security agreement gave BancorpSouth a security interest in "all of the Property described ... wherever the Property is or will be located, and all proceeds and products of the Property." The loan was secured by three pieces of equipment: a bulldozer, an excavator, and a backhoe [(collectively, "collateral")]. The security agreement describes the property generally as "all equipment," and states that it "covers the above collateral, whether now owned or hereinafter acquired, together with all supporting obligations, proceeds, products.... The inclusion of proceeds does not authorize debtor to sell or trade the above described property." The next day, BancorpSouth filed a UCC–1 financing statement on the secured equipment with the Tennessee Secretary of State.
>
> In August 2006, Chorley purchased a new bulldozer from […] Thompson Machinery Commerce Corporation ("Thompson").  He traded the secured bulldozer in exchange for an $18,000 cash discount on the new bulldozer. Chorley affirmatively represented to Thompson that there were no liens, debts, or encumbrances on the trade-in bulldozer, and that it was his sole property. Shortly thereafter, Thompson sold the secured bulldozer to a third party for $18,500.
>
> In December 2006, Chorley purchased a new trackhoe from Thompson. In doing so, Chorley traded in the secured excavator and received a trade-in credit of $42,500 toward the purchase of the new trackhoe. Chorley made similar misrepresentations to Thompson that the

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

trade-in excavator was not subject to any debts or encumbrances. Thompson then sold the secured excavator to the same third party for the amount of Chorley's trade in. Thompson did not perform a UCC records check on either the bulldozer or the excavator traded in by Chorley.

In June 2007, Chorley gave […] 51 Concrete, [LLC] ("51 Concrete") [(together with Thompson, "Appellees")] possession of the secured backhoe in exchange for a $23,000 credit against an existing debt Chorley owed to 51 Concrete. This secured backhoe was subsequently sold by 51 Concrete for $23,000, which was applied to Chorley's account at 51 Concrete. After the $23,000 credit was combined with a loan from another bank, Chorley received a lien waiver in which 51 Concrete waived any further claims it had against Chorley on his debt.

In May 2008, Chorley defaulted on his obligations to BancorpSouth under the June 2006 security agreement. As a result, BancorpSouth filed a lawsuit against Chorley. In July 2008, BancorpSouth received a default judgment against Chorley in the amount of $55,703.37, with post-judgment interest.

*Id.* at *1-2.

Shortly after BancorpSouth obtained its judgment against Chorley, it sent separate demand letters to both Thompson and 51 Concrete demanding $55,703.37 from both entities. Neither Thompson nor 51 Concrete immediately responded. In May 2009, Chorley filed for Chapter 7 bankruptcy protection. *Id.* at 2.

[S]hortly after Chorley filed his bankruptcy petition, BancorpSouth filed the instant lawsuit in the Shelby County Chancery Court ("trial court") against Thompson and 51 Concrete. The complaint sought money damages, attorney fees, and punitive damages for conversion and for voiding BancorpSouth's security interest in the secured equipment. After some delay, both Thompson and 51 Concrete answered, denying BancorpSouth's allegations. Discovery ensued.

*Id.* The trial court conducted a bench trial on September 15, 2010. *Id.* at *3. In an order dated January 5, 2011, for reasons not germane to this appeal, the trial court determined it did not have subject-matter jurisdiction over the case. *Id.* The trial court held in the alternative that BancorpSouth was not entitled to attorney's fees or punitive damages. *Id.* The trial court dismissed BancorpSouth's claims without prejudice. *Id.*

BancorpSouth appealed the trial court's January 5, 2011 order. On appeal, this Court determined that the trial court did have subject-matter jurisdiction. Additionally, we reversed the trial court's holding with respect to attorney's fees, vacated the trial court's holding regarding punitive damages, and remanded for further proceedings on all issues.

***Id.*** at *7.  A remand hearing was held on April 22, 2013.  The trial court entered an Amended Findings of Facts, Conclusions of Law and Order of Final Judgment on June 20, 2013.  The order awarded BancorpSouth $78,347.86, which represented the original amount of BancorpSouth's judgment against Chorley plus post-judgment interest. The trial court apportioned this award between the two Appellees according to the amount of proceeds they each received from the sale of the collateral. The trial court again held that Appellant had no contractual or statutory basis for attorney's fees, and that punitive damages were not warranted.  BancorpSouth now appeals.

## II. Issues

Appellant presents the following four issues for review:

1. Whether the trial court used the proper measure of damages.

2. Whether the trial court correctly determined the date that interest began to accrue on the judgment.

3. Whether the trial court erred when it failed to award Appellant attorney's fees.

4. Whether the trial court erred when it denied Appellant's claim for punitive damages and refused to allow Appellant to present further proof on the issue of punitive damages.

In the posture of Appellee, both Thompson and 51 Concrete present one issue for review:

Whether the trial court correctly determined the date that interest began to accrue on the judgment.

## III. Standard of Review

This case was tried without a jury.  Consequently, we review the findings of fact made by the trial court *de novo*, with a presumption of correctness unless the preponderance of the evidence is to the contrary.  Tenn. R. App. P. 13(d).  The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Analysis

4

## A. Damages and Interest

Appellant argues that the trial court erred when it awarded damages based on the amount of BancorpSouth's judgment against Chorley. Appellant asserts that, instead, the proper measure of damages is the full amount of the proceeds from the sale of the collateral. Appellant also argues that the trial court erred when it did not award pre-judgment interest. Appellees assert that the trial court's award of post-judgment interest actually amounts to pre-judgment interest and should be reversed.

The terms of the security agreement, to which Appellees are subject under Tennessee Code Annotated §47-9-201(a),[2] provide that Appellant retains an interest in the proceeds of the sale of the collateral. Specifically, the security agreement states that the "Debtor gives Secured Party a security interest in all of the Property…and all proceeds and products of the Property." The security agreement defines proceeds to include "anything acquired upon the sale … or other disposition of the Property." BancorpSouth argues that because the Appellees are subject to the security agreement, the trial court should have used the total proceeds from the Appellees' sale of the collateral as the proper measure of damages.

"In the appeal of a damages award, the appellate review of '[w]hether the trial court has utilized the proper measure of damages is a question of law that we review *de novo*.'" *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 352 (Tenn. Ct. App. 2007) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998)). "The amount of damages awarded, however, is a question of fact so long as the amount is within the limits set by the law." *Id.* BancorpSouth's complaint asserts a conversion claim against the Appellees. When a plaintiff sues a third party for conversion of secured property, the plaintiff is entitled to damages in the amount of the fair market value of the secured property at the time of sale. *See Mammoth Cave Prod. Credit Ass'n v. L.H. Oldham and Walter Taylor d/b/a Smith County Tobacco Warehouse Co.*, 469 S.W.2d 833, 840 (Tenn. Ct. App. 1977). In using BancorpSouth's judgment against Chorley as a basis for calculation of damages, the trial court did not use the proper measure of damages. Because the trial court failed to use the correct measure of damages, we reverse the trial court's damage award.

The calculation of damages in this case requires a determination of the fair market value of the collateral. None of the parties dispute that Thompson sold two pieces of the collateral for a total of $61,000, and 51 Concrete sold the third piece of collateral for $23,000. None of the parties have suggested a fair market value other than the sale price. In the absence of other evidence regarding the value of converted property, a court may assume the sale price constituted fair market value. *See Hobbs v. Hobbs*, No.W2004-

---

[2] "[A] security agreement is effective according to its terms between the parties, against purchasers of collateral, and against creditors." Tenn. Code Ann. § 47-9-201(a).

01553-COA-R3-CV, 2004 WL 1541866 (Tenn. Ct. App. June 29, 2005). Because there is no evidence aside from the sale price, we hold that these values represent the fair market value of the collateral at the time of conversion. Therefore, BancorpSouth is entitled to a judgment against Thompson in the amount of $61,000 and a judgment against 51 Concrete in the amount of $23,000.

## B. Attorney's Fees

Appellant argues that the trial court erred when it held that Appellant did not have a statutory or contractual basis to collect attorney's fees from Appellees. "In Tennessee, courts follow the American Rule, which provides that litigants must pay their own attorney's fees unless there is a statute or contractual provision providing otherwise." *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). In *BancorpSouth I*, we held only that Appellant could rely on certain UCC provisions codified in the Tennessee Code Annotated to seek attorney's fees. *BancorpSouth I* at *6. We also held that "the provisions in the security agreement on attorney['s] fees and legal expenses would be applicable to 51 Concrete and Thompson." *Id.* Despite our holdings in *BancorpSouth I*, the trial court concluded on remand that "BancorpSouth's claim for attorney's fees fails because neither [of the Appellants] entered into an agreement with BancorpSouth that provides for attorney's fees, nor is there a statutory provision providing for the award of attorney's fees in this case. Therefore, BancorpSouth is not entitled to an award of attorney's fees."

Typically, appellate courts "will not interfere with a trial court's decision regarding attorney fees except upon a clear showing of abuse of discretion." *BancorpSouth I* at *4 (quoting *Taylor*, 158 S.W.3d at 359). "A trial court abuses its discretion when it 'applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.'" *Id.* (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). On remand, the trial court again concluded that BancorpSouth had neither a statutory nor contractual basis for collecting attorney's fees. Because the trial court failed to properly apply our holding in *BancorpSouth I*, we undertake to examine the statutory and contractual provisions to resolve the issue of whether Appellant is entitled to attorney's fees.

In *BancorpSouth I*, this Court held that the Appellant could seek attorney's fees under Tennessee Code Annotated Section 47-9-607(d). *BancorpSouth I* at *6. Section 47-9-607(d) states that a "secured party may deduct from the collections made … reasonable expenses of collection and enforcement, including reasonable attorney's fees and legal expenses incurred by the secured party." Reasonable attorney's fees and legal expenses include "only those fees and expenses incurred in proceeding against account debtors or other third parties." Tenn. Code Ann. § 47-9-607, cmt. 10. This Court has determined that "in this conversion action, [BancorpSouth] may rely on these UCC provisions to seek

6

attorney fees and legal expenses." ***BancorpSouth I*** at \*6.

Although the statute applies to the case at bar, the statute's language does not entitle Appellant to attorney's fees in addition to an award of damages. When reading "statutory language that is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." ***Eastman Chemical Co. v. Johnson***, 151 S.W.3d 503, 507 (Tenn. 2004). A plain reading of Subsection (d) only allows that a secured party may *deduct* attorney's fees and legal expenses from any collections made. The statute does not make any mention of collecting attorney's fees in addition to other collections. Therefore, while Appellant is certainly able to rely on Tennessee Code Annotated Section 47-9-607(d), the statute does not permit Appellant to collect attorney's fees beyond its award. Rather, under the statute, Appellant may only deduct such fees from its award. Other jurisdictions have reached the same conclusion when interpreting this UCC section. *See* ***Amegy Bank Nat. Ass'n v. DB Private Wealth Mortg., Ltd.***, 2014 WL 2199641, \*4 (M.D. Florida May 27, 2014) (holding that, under this UCC provision, "attorney's fees may be deducted from a judgment. Attorney's fees may not be added to the amount of the obligation."); ***CapTran/Tanglewood LLC v. Thomas N. Thurlow & Associates***, 2011 WL 2969835, \*4 (S.D. Texas July 21, 2011) ("The plain language [of this UCC provision] is that attorney fees are to be *deducted* from, rather than added to, the amount collected."); ***M & I Business Credit, LLC, v. Genie Industries, Inc.***, No. 10-1660 (JRT/JJK), 2011 WL 284488 (D. Minn. Jan. 25, 2011) (holding that, based upon the same UCC provision, the plaintiff was "not entitled to recover attorney fees and legal expenses in addition to the [judgment amount].").

Turning to the Appellant's contractual claim for attorney's fees, Appellant argues that the security agreement's terms require an award of attorney's fees. In ***BancorpSouth I***, this Court held that because Appellees are subject to the security agreement between Chorley and BancorpSouth,[3] Appellant has a contractual basis for seeking attorney's fees. ***Id.*** at \*7. However, this Court declined "to address whether the evidence shows that BancorpSouth is entitled to … attorney fees and legal expenses." ***Id.*** As noted earlier in this opinion, the trial court did not correctly apply the ***BancorpSouth I*** holding on remand. Instead, the trial court concluded that Appellant had no contractual basis for seeking attorney's fees.

Because the interpretation of a written agreement is a matter of law, ***Allstate Ins. Co. v. Watson***, 195 S.W.3d 609, 611 (Tenn. 2006), we undertake to interpret the language of the security agreement, *de novo*, in order to resolve the issue of whether Appellant is entitled to attorney's fees under the agreement. "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." ***Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.,*** 521

---

[3] *See* Tennessee Code Annotated Section 47-9-201(a).

7

S.W.2d 578, 580 (Tenn.1975).  When interpreting a contract, the interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect. *See **Davidson v. Davidson**,* 916 S.W.2d 918 922–23 (Tenn.Ct.App.1995).  The entire written agreement must be considered.  ***D. & E. Const. Co. v. Robert J. Denley Co.,*** 38 S.W.3d 513, 518–19 (Tenn. 2001).

The security agreement states that

> If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law.  Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorney's fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts.  Debtor … will be liable for the deficiency, if any.

Appellant argues that the language "Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorney's fees and legal expenses" requires that the Appellees pay for all of the attorney's fees that Appellant has incurred in this case.  We disagree.  While that language standing alone may create liability for attorney's fees, it is well settled that this Court must read contractual language in the context of the entire agreement. ***D. & E. Const. Co.,*** 38 S.W.3d at 518–19. The use of the term "Secured Party" drives our interpretation.  By its own terms, the disputed provision applies only to a "Secured Party," and only then in those circumstances where a "Secured Party" has collected or disposed of the collateral.  Here, Thompson and 51 Concrete are third parties, not secured parties.  Under the plain language, we cannot read this provision to impose liability upon Thompson and 51 Concrete for BancorpSouth's attorney's fees.

The provision simply does not contemplate the factual scenario presented in this case. Furthermore, the language "*any* collection or disposition" does not serve to create liability for attorney's fees in all cases because such collection or disposition is still contingent on the secured party taking the action of "collecting or disposing."  Here, it is undisputed that the secured party did not keep or dispose of the collateral.  In short, the contractual language on which Appellant relies does not provide BancorpSouth with a contractual right to recover attorney's fees.  Our holding does not contradict our previous holding in ***BancorpSouth I***.  In ***BancorpSouth I***, this Court merely held that the Appellees were subject to the terms of the security agreement.  This Court declined "to address whether the evidence shows that BancorpSouth is entitled to … attorney fees and legal expenses."  Much like our holding in ***BancorpSouth I*** with regard to the UCC provisions, we only mandated that the trial court consider the contractual provisions affecting the case.  The trial court failed to comply with that mandate, thus placing the

issue squarely before this Court. Accordingly, based on the plain and unambiguous language of the security agreement, and for the foregoing reasons, we conclude that Appellant is not entitled to collect its attorney's fees from the Appellees.

### C. Punitive Damages

BancorpSouth argues that the trial court erred when it held that 51 Concrete and Thompson were not liable for punitive damages. BancorpSouth argues that Appellees' failure to check whether there was a prior interest in the collateral was reckless conduct sufficient to uphold an award of punitive damages. Appellant also argues that the Appellees acted intentionally to subvert the rights of the Appellant in the collateral when they refused to remit the proceeds of the sale of the collateral to Appellant. BancorpSouth argues that such conduct rises to a sufficiently egregious level so as to warrant an award of punitive damages.

Our Supreme Court revised the courts' approach to punitive damages in ***Hodges v. S.C. Toof & Co.***, 833 S.W.2d 896 (Tenn. 1992). "The trial court may award punitive damages if it finds, by clear and convincing evidence, that a defendant's wrongful actions were intentional, fraudulent, malicious, or reckless." ***White v. Empire Exp., Inc.***, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012) (citing ***Hodges***, 833 S.W.2d at 901). "Clear and convincing evidence 'leaves no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" ***White***, 395 S.W.3d at 721 (quoting ***Hodges***, 833 S.W.2d at 901, n. 3). This heightened standard of proof is required "because punitive damages are to be awarded only in the most egregious of cases." ***Hodges***, 833 S.W.2d at 901. Whether the evidence clearly and convincingly establishes that punitive damages are warranted is a question of law, subject to *de novo* review with no presumption of correctness. *See* ***White***, 395 S.W.3d at 721.

The trial court held that the Appellees did not engage "in conduct that is the egregious type of conduct for which punitive damages are designed to deter." The trial court further concluded that "BancorpSouth failed to establish by clear and convincing evidence that either Thompson Machinery or 51 Concrete engaged in the type of intentional, fraudulent, malicious or reckless conduct that justifies the award of punitive damages under Tennessee law." Upon review of the record, we agree with the trial court's conclusion.

Appellant's brief maligns Appellees' failure to discover the security interest in the collateral and asserts that this failure constitutes reckless conduct sufficient to merit punitive damages. Appellees do not dispute that they purchased the collateral without attempting to discover whether a prior security interest existed. Appellees admit that it was their practice to not perform checks for prior interests in equipment they were purchasing at the time Chorley sold them the collateral. Appellees also presented evidence that not checking for such interests was standard industry practice at the time.

Appellant cites *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521 (Tenn. 2008) in support of its argument that even if a party follows industry practice, as the Appellees did in this case, punitive damages may still be awarded. In *Flax*, our Supreme Court held that "if a manufacturer knows that a common industry practice in an industry presents a substantial and unjustifiable risk to consumers, then compliance with the common practice is not an absolute bar to the recovery of punitive damages." *Id.* at 536.

*Flax*, however, is factually distinguishable from the case at bar. The *Flax* plaintiffs brought a products liability claim against DaimlerChrysler after the seats in a vehicle manufactured by DaimlerChrysler caused the death of a child. *Id.* at 526. Testimony in *Flax* revealed that DaimlerChrysler's engineers were aware of the dangers posed by the car seat's design, but the company chose not to change their design. *Id.* at 535. On these facts, the Supreme Court held that compliance with industry standards was not an absolute bar to punitive damages. *Id.* at 536. The case at bar, however, is a conversion case. Testimony reveals that both Appellees had a prior business relationship with Chorley. Thompson had been conducting business with Chorley since 1998. The record further reveals that Chorley misrepresented to both Thompson and 51 Concrete that the collateral was not subject to a prior interest. While compliance with industry standards is not an absolute bar to punitive damages, we fail to see how the Appellees' conduct can be compared to the conduct of DaimlerChrysler in *Flax*. Based on the totality of the circumstances, we cannot conclude that the evidence clearly and convincingly establishes the Appellees' conduct as sufficiently egregious as to merit punitive damages.

Finally, Appellant argues that Appellees' refusal to remit all proceeds from the sale of the collateral was intended to subvert the rights of Appellant, thus giving rise to grounds for punitive damages. Neither party contests that the Appellees cooperated with the Appellant in providing information about the collateral. Appellees do not deny that Appellant has an interest in the collateral. The trial court found that Appellees attempted to resolve Appellant's claims. The record reveals that Thompson and 51 Concrete helped BancorpSouth to locate the collateral after Chorley's default. Appellees have only disputed the amount they are required to remit to BancorpSouth. From the totality of the circumstances, we cannot conclude that Appellees' conduct in this regard was so egregious as to warrant punitive damages. The judgment of the trial court denying punitive damages is, therefore, affirmed.


## V. CONCLUSION


For the foregoing reasons, we reverse the trial court's award of damages, reverse the trial court's holding that BancorpSouth had no statutory or contractual basis for seeking attorney's fees, and affirm the trial court's denial of punitive damages. We remand the case to the trial court for entry of judgment in favor of BancorpSouth and against Thompson Machinery in the amount of $61,000 and against 51 Concrete in the amount of

$23,000.   The case is also remanded for any further proceedings that may be necessary and are consistent with this opinion.  Costs of this appeal are assessed one-third to the Appellant, BancorpSouth and its surety, one-third to Appellee Thompson Machinery, and one-third to Appellee 51 Concrete, for all of which execution may issue if necessary.

_____

KENNY ARMSTRONG, JUDGE